## John C. Patterson, Plaintiff in Error. v. The Northern Trust Company et al., Defendants in Error.

### Gen. No. 16,613.

1. MASTERS IN CHANCERY—*when report advisory.* A report of a master in chancery made pursuant to reference "to take evidence and report the same to this court together with his conclusions thereon," is

advisory merely, and has no force or effect as an adjudication, and such an order of reference does not amount to a delegation of judicial power.

2. MASTERS IN CHANCERY—*when permitting use of evidence taken upon previous reference not error.* Such a practice, *held,* in this case, not erroneous, and *held,* further, that a party availing thereof was in no position to complain.

3. MASTERS IN CHANCERY—*when findings presumed supported by evidence.* The findings of fact by a master approved by the court will be presumed to have been supported by the evidence heard where such evidence is not preserved and presented for review.

4. ACCOUNTING—*when preliminary reference proper.* If the defendant to a bill for an accounting claims in his answer that he has fully accounted and denies that he has ever refused to account to the complainant, it is proper practice to make a special reference to a master to take testimony and report on the preliminary question or issue thus raised.

5. VENUE—*when denial of application not error.* A petition for a change of venue presented after the filing of the report of the master to whom the cause was referred should state that the alleged cause (prejudice) ''has arisen or come to the knowledge of the applicant within less than 10 days before the making of the application.'' Reasonable notice of such an application must likewise be given to the adverse party. If the application is defective in the form of the petition and in the absence of reasonable notice a denial of the change constitutes no abuse of discretion.

6. PLEADING—*when supplemental bill properly stricken.* Where leave to file a supplemental bill of complaint has been given, and the bill, when filed, seeks to relitigate adjudicated questions, etc., it may properly be stricken from the files.

Error to the Circuit Court of Cook county; the HON. LOCKWOOD HONORE, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1910. Affirmed. Opinion filed May 23, 1912. *Certiorari* denied by Supreme Court (making opinion final).

JAMES HAMILTON LEWIS, for plaintiff in error.

JUDAH, WILLARD, WOLF & REICHMANN, for defendants in error.

MR. JUSTICE FITCH delivered the opinion of the court.
This writ of error was brought to reverse a decree of the Circuit Court of Cook County, dismissing for

want of equity a bill filed by the plaintiff in error for an accounting.

The facts alleged in the bill are in substance as follows: The complainant and all the defendants, except The Northern Trust Company, were the owners of a piece of ground ninety-one feet by ninety-five feet in size, located at the northwest corner of State and Washington streets, Chicago, which was encumbered by a mortgage for $140,000, and was leased for one hundred and two years, beginning May 1, 1893, to H. H. Kohlsaat (who had assigned the same to the Merrimac Building Company) at an annual rental of $47,350 for the first three years, $57,500 for the next five years, $65,000 for the next five and $75,000 for the remainder of the term, payable quarter-yearly. The building company, after issuing mortgage bonds against the leasehold, erected upon said tract of ground a twelve-story fire-proof office building, known as the Stewart Building. In December, 1897, all the land owners, including complainant, executed a trust deed conveying the ground above mentioned, subject to the lease and the encumbrance of $140,000, to The Northern Trust Company in trust, to hold the same until May 1, 1917, and during that time to collect all the income from the same and out of such collections to pay, first, $20,000 as directed by the owners; second, interest on the encumbrance and all expenses of the trust, including $1000 a year as compensation to the trustee; third, certain annuities to the owners amounting to about $40,000 a year; and fourth, with the remainder to create a sinking fund to pay the encumbrance. By one clause of this trust deed it was provided that the agreement in writing of the owners of three-fourths of the property shall be binding in the settlement of the trustee's accounts, and effectual to discharge it from any further accounting as to the matters included in any such setlement. The complainant has only a life estate in one-third of the in-

terest of his son, Stewart Patterson, who is the owner, subject to such life estate, of one-fourth of the fee of said ground, and the amount of complainant's annuity as fixed by the deed of trust, was $277.77 per month. It was also provided in the trust deed, that if the net rentals of the property should not be enough to pay the annuities, the trustee should advance the amount of the deficiency to the beneficiaries, and for such advances with interest, the trustee was given a lien upon the share of the fee of the owner to whom such advances were made.

At the time of the execution of the deed to The Northern Trust Comupany, the ground rent was in arrears to the amount of about $25,000, and The Northern Trust Company, as trustee, at once served notice on the Merrimac Building Company that on account of such non-payment of rent it had elected to forfeit the lease, and demanded that the tenant yield possession on March 1, 1898. The bill avers that instead of taking possession according to this notice, the trustee, in alleged violation of its trust, made an agreement with the tenant company on March 15, 1898, providing in substance, that "to avoid litigation" no steps should be taken to enforce the forfeiture of the lease until July 1, 1900, the trustee in the meantime to take possession and control of the building, lease the same and collect the rents, and after paying all expenses, including $1200 a year for a manager and a commission of 2½% on rents collected, to apply the surplus to the payment of the rent accrued and to accrue until July 1, 1900, when, if the rent then due was fully paid, the possession of the building should be restored to the tenant; but if not so paid, then all rights of the tenant in the premises should cease and the lease should be considered at an end. The bill avers that by means of this agreement the trustee secured to itself a commission of $5,625, and attorneys' fees amounting to $620, as a "consideration of this breach

of trust;'' that between March 15, 1898, and June 28, 1900, the trustee collected $213,115.06, out of which $45,029.89 was paid on account of ground rent, and all the remainder was paid out in "alleged salaries, alleged expenses and large repairs, and has never been accounted for by said trustee, and said trustee has hitherto refused and still refuses to account'' for the same.

In June, 1900, the bondholders of the building company began suit to foreclose their mortgage bonds and a receiver was appointed who took possession of the building June 28, 1900, and remained in possession until December 10, 1900, during which period he collected, it is alleged, about $25,000 in rents, which the bill claims should be charged to the trustee. On August 10, 1900, the Northern Trust Company, as trustee, filed a bill against the building company to foreclose its lien for ground rent then due amounting to about $140,000, and C. W. Hubbard, a clerk for The Northern Trust Company, was appointed receiver and took possesion of the premises on December 10, 1900. He remained in possession until June 24, 1902, collected all the rents, amounting to $209,621.48, and out of such collections, paid on account of ground rent $93,750. The bill charges that all of the remainder was paid out by the trustee "in alleged salaries, alleged expenses and alleged attorney fees, and has never been accounted for by said trustee, and said trustee has hitherto refused and still does refuse to account'' for the same. The bill also charges that during this time the trustee illegally charged to the owners of the fee about $5000 for the services of Hubbard as receiver.

On June 24, 1902, Hubbard resigned and the trust company was appointed receiver and collected the rents from that date until the date of the filing of the bill, March 15, 1904, during which time it collected $228,242.24, and paid on account of current ground rent $113,750. The remainder is alleged in the same

language as before, to have been paid out in "alleged salaries, expenses, attorneys' fees," etc. The bill avers, as a sort of summary, that the trustee had been in possession all the time from March 15, 1898, (the date of the Merrimac agreement) until the filing of the bill, March 15, 1904, and had collected rents amounting in all to $671,987.78, out of which it had paid on account of ground rent "only the sum of $252,500, according to its accounts," and expended the remainder in salaries, expenses, repairs and attorneys' fees, and has never accounted for the same.

The bill further alleges that the suit to foreclose the lien for ground rent was unnecessary and of no benefit to the trust fund, and was only brought for the purpose of enabling the trustee to make a profit out of its trust. It is averred that in June, 1902, pending the hearing of that suit, a decree was entered therein by agreement with the building company, finding that there was due $180,000 for back rent, and $20,000 attorneys' fees; but it was provided, however, that no sale should be made under such decree until March 15, 1904. It is charged that sufficient money was collected by the trustee, from the beginning of the trust to the date of the filing of the bill, to have paid all the annuities provided for in the deed of trust, but that the trustee, prior to July 1, 1903, only paid to complainant one-half of his share of the same, and that it charged even that half on its books as a loan to complainant at compound interest. In June, 1903, complainant executed a note for $6516.04, payable to The Northern Trust Company for advances theretofore made by the trust company to complainant. Complainant avers that he was not aware of the true state of his account at that time. In November, 1903, complainant filed objections in court to one of the accounts of the trust company as receiver, and thereupon, it is charged, the trustee demanded payment of said note and refused to pay the complainant his "monthly

income,'' whereupon complainant withdrew his objections and the account was approved by the court; that the same thing occurred again in February, 1904, when another receiver's account was presented to the court. It is further alleged that in January, 1901, the trustee induced complainant and his son to execute a mortgage for money claimed by the trustee to have been advanced, amounting to $18,533.33, which they signed ''in order to obtain their income;'' that in the same way, for the same purpose and in the same month, another mortgage was executed for $22,462.25, and in November, 1901, a third mortgage for $18,167.39; that nothing was or is due to the trustee on any of the said mortgages, yet the trustee refuses to cancel or release the same. The complainant avers that he has repeatedly asked for an accounting and that the trustee refuses to account, but falsely pretends that the trust property received was inconsiderable and has been duly applied as directed in the trust deed. The bill prays for an accounting; that the trust company be removed as trustee and another appointed; that a receiver be appointed in the meantime; that the trust company be enjoined from applying complainant's income to the payment of said notes, and for general relief.

Upon the filing of this bill a temporary injunction was issued as prayed. The owners of three-fourths of the fee filed answers which, in substance, deny all the material allegations of the bill so far as they relate to the alleged wrongful acts of the trustee, state that the trustee has handled the property satisfactorily to them and has accounted fully to them, and deny that full accounts have not been made and given to complainant. The owner of the remaining fourth interest, Stewart Patterson, the son of complainant, filed an answer admitting most of the allegations of the bill and submitting his rights to the court. The Northern Trust Company answered admitting the allega-

tions of the bill regarding the creation and existence of the trust, and that it went into possesion of the premises, leased the same and collected the rents as alleged in the bill, but claims that it took possession under the agreement with the Merrimac Company as agent of that company, and not as trustee; that it rendered regular monthly statements of rents received and moneys paid out to the building company, and mailed copies thereof to all the owners of the fee, including complainant; it admits that the amounts stated in the bill as having been collected and paid out are correctly stated, but asserts that the amounts collected were not expended for the purposes alleged in the bill of complaint, but were necessarily expended in completing the building, in making repairs, in operating expenses, and in the payment of taxes and insurance; that all it received as compensation was $5,625, and that only $620 was paid out for attorneys' fees, both of which items are alleged to be reasonable and proper charges under the terms of the Merrimac agreement; that said agreement was entered into and signed by all the owners, including the complainant, and was executed by the trust company at their request; that it has accounted fully for all moneys received in pursuance of such agreement and from all other sources, and that all statements in the bill to the contrary are utterly false and unfounded. The trustee's answer further alleges that the several steps taken and the suits instituted were so taken and instituted upon the advice of counsel and with the full knowledge and consent of all the parties, including complainant; that it has been guilty of no breach of trust; that the complainant, who is a lawyer of mature years, in practice for more than twenty years in Chicago, fully understood and was fully informed of each and every step taken and act done, and made no objection to anything until the trust company declined to make him further personal loans and advances.

Patterson v. The Northern Trust Co., 170 Ill. App. 501.

Replications being filed to these answers, the cause was referred to Master in Chancery Leaming to take proofs and report the same, with his opinion on the law and the evidence. The master took over 600 pages of testimony which, with over 1000 exhibits, he reported to and filed in court at the expiration of his term of office. Then a new order was entered on March 8, 1907, referring the case to Master in Chancery Rogers to take evidence and report the same with his conclusions upon two questions only; whether the trustee is accountable to complainant, and whether, if so accountable, it has fully discharged its obligation to account. As part of the order of reference, the master was directed to take into account the pleadings "and such portions of the evidence heretofore taken in this case before Master in Chancery Jeremiah Leaming as either of said parties may desire to present, subject to all proper and legal objections." Upon this reference, complainant appeared before Master in Chancery Rogers and introduced in evidence practically all of the testimony and exhibits that had been previously introduced before Master in Chancery Leaming. Extended arguments were heard by the master upon the questions of law and fact involved, and the master made and filed a report stating all the foregoing facts, and also many other facts appearing from such evidence, (including the fact that on February 21, 1905, $210,487.20 was paid to the trustee in full settlement of the decree entered, as above stated, in the suit to foreclose the owners' lien for ground rent) and found that all the parties were fully advised of each step in the several proceedings above mentioned, and that the trustee had fully accounted to them; that they were all of age and none of them had ever complained until the complainant filed exceptions to one of the receiver's accounts, as above stated; that the complainant had produced no evidence in support of his various charges of misconduct and

had failed to point out where any injury had been done
to him, except as to the custom of charging compound
interest; that the owners of three quarters in interest,
who have the right to approve the trustee's accounts,
are not making any complaint; that complainant made
no demand for any account other than those he re-
ceived; that by his course of conduct he must be held
to have ratified and agreed to the charges of compound
interest; that in any event it would be inequitable,·be-
cause of a slight error of this sort in the trustee's
account to compel the trustee to come into court and
make such an extended and expensive accounting as
complainant now desires; that the bill was not filed
in good faith; that the trustee has always at all times
discharged its obligation to account to every reason-
able extent; and recommended that the bill of com-
plaint be dismissed. After this report had been pre-
pared and notice thereof given to the parties, the com-
plainant prepared a supplemental bill, and on Novem-
ber 13, 1908, on notice, but in the absence of defend-
ant's counsel, leave was given to file the same. On
the next day a motion was entered by the trust com-
pany to strike the supplemental bill from the files and
an order was entered continuing this motion, which
order recites that the order giving leave to file had
been entered by the court without knowing there was
any opposition thereto, and that said order and the
motion to strike would be considered together and
treated as a motion by the complainant for leave to
file the supplemental bill. Master Rogers' report was
filed December 17, 1903, and attached to the same was
an itemized bill of the master for $1202.13 fees. Ob-
jections and exceptions were filed by the complainant
to the report and to the bill for fees. Pending the
hearing upon these questions, on February 3, 1910,
complainant filed a petition for change of venue, which
was denied February 10, 1910. On March 19, 1910, the
exceptions to the master's report were overruled, the

report approved, and the supplemental bill was stricken from the files; and on March 22, 1910, a decree was entered finding that the trustee has discharged its obligation to account to the complainant, and dismissing the bill for want of equity at complainant's costs.

The errors assigned are, in substance, that the court erred (1), in entering the special order of reference to Master in Chancery Rogers; (2), in denying the petition for change of venue; (3), in striking the supplemental bill from the files; and (4), in overruling the objections to the master's report, and approving the same with his bill for costs, and dismissing the bill for want of equity.

*First.* It is urged that the preliminary question whether an account should be ordered, is a question of law for the court, and cannot be referred to a master, to decide. If the order of reference could be considered as a delegation of judicial power to hear and determine the rights of the parties, there might be force in this objection. Counsel for complainant assume that such is the meaning and effect of the order. In this, he is in error. The order cannot be so construed. It is in the usual, statutory form. It directs the master "to take evidence and report the same to this court, together with his conclusions thereon." See Ill. Rev. Stat., Chap. 22, Sec. 39. This is not a delegation of judicial power. Leigh v. Laughlin, 222 Ill. 265, 269. A master's report made in pursuance of such an order is merely advisory. It has no force or effect as an adjudication. The parties are not concluded by its findings; while *prima facie* correct, they are not binding until approved by the court. Ennesser v. Hudek, 169 Ill. 494; Larson v. Glos, 235 Ill. 584; Kueper v. Mette, 239 Ill. 586, 593.

While it is undoubtedly the customary and usual procedure in suits of this character for the court to first "settle the rights of the parties by an interlocutory decree which fixes the basis for stating the ac-

count" (Ennesser v. Hudek, *supra,* 501), yet where, as here, the defendant claims in his answer (and sets up facts apparently supporting such claim) that he has fully accounted, and denies that he has ever refused to account to the complainant, it is proper practice to make a special reference to a master to take testimony and report on the preliminary question or issue thus raised. Christy's Appeal, 92 Pa. St. 157; Ill. Rev. Stat., Chap. 22, Secs. 39, 40.

It is further contended that the order directed Master Rogers to report on the evidence previously taken before Master Leaming, and is therefore erroneous, under the rule laid down in Coel v. Glos, 232 Ill. 142, and later cases to the same effect. This is a misapprehension on the part of counsel. The terms of the order do not bring it within the rule mentioned. The order merely permitted either of the parties to introduce before Master Rogers such of the evidence previously taken as either might desire to present subject to all proper objections. Moreover, the record does not show that complainant objected to the entry of the order in this form; and it appears that the complainant himself offered in evidence all the testimony previously taken, together with nine volumes of exhibits containing statements of accounts and thousands of vouchers, and the same were admited in evidence without objection. We think, therefore, the alleged errors in the entry of the order of reference are not well assigned.

*Second.* It is next claimed that the court erred in denying a petition for a change of venue, filed in February, 1910, several months after the master's report was filed. Counsel for plaintiff in error made no argument upon this point. The record does not show that any notice such as the statute requires was given, and the petition does not state that the alleged cause (prejudice on the part of the judge) "has arisen or come to the knowledge of the applicant within less

than ten days before the making of the application."
Ill. Rev. Stat., Chap. 146, Sec. 6. Moreover, section
5 of the same statute requires reasonable notice of
the application to be given to the adverse party "and
what is reasonable notice in a particular case must be
left to the discretion of the judge to whom the appli-
cation is made, and that discretion will not be inter-
fered with unless abused." Glos v. Garrett, 219 Ill.
208, 213. We think there was no abuse of discretion
in the ruling in question.

*Third.* It is next urged that error was committed
in striking the supplemental bill from the files. In
the supplemental bill, the complainant alleged that on
July 15, 1906,—two years and four months before
leave was asked to file it—he learned "by an examina-
tion of the records of Cook County  *  *  *  that the
Merrimac Company  *  *  *  was an illegal corpora-
tion forbidden to hold title to real estate by the laws of
Illinois." Upon this foundation is erected a volum-
inous supplemental bill attacking the validity of every
act done by the trustee to which the Merrimac Com-
pany was a party or in which it was in any manner con-
cerned. The conclusions which plaintiff in error draws
from the facts alleged in the supplemental bill are
thus stated in his reply brief:

"The Merrimac Company was not a corporation *de
facto* or *de jure;*  *  *  *  by reason whereof, the
pretended assignment" (of the lease) "was null and
void and worked a forfeiture of said lease.  *  *  *
The Kohlsaat lease then and there died a natural death,
and can never be resurrected again in any way known
to law or equity. The conveyance by Merrimac Com-
pany to secure bonds in 1896 was void and the bonds
void. The stock of the said Merrimac Company was
also void.  *  *  *  The so-called Merrimac agree-
ment of March 15, 1898, was a breach of trust through a
mistake of law and fact, but was not known to be such
by the trustee or the beneficiaries of said trust.  *  *  *

The proceedings of the trustee in pursuance thereof were a breach of trust and null and void. The accounts kept by the trustee as agent for the Merrimac Company and trustee of the Stewart building were null and void, false accounts and a breach of the duty of the trustee  *  *  *  as the Merrimac Company had no legal existence. The foreclosure suit by trustee against the Merrimac Company, void as aforesaid, was a breach of trust  *  *  *  and all the proceedings, orders, master's reports and decrees, entered by stipulation therein, were breaches of trust and null and void, because the Merrimac Company was a phantom corporation.  *  *  *  The fact that these orders and decrees, on writ of error, were affirmed by the Appellate and Supreme Courts does not confer on the Circuit Court any jurisdiction of the Merrimac Company, which had no existence, legal or equitable. Wherefore  *  *  *  the accounts of Receiver Hubbard and The Northern Trust Company, as receiver, in said Merrimac suits, are null and void and cannot operate as an account of the receipts and disbursements of the rents and profits of the trust property required by law to be kept by the trustee.''

Upon the motion to strike this supplemental bill from the files, it was shown by affidavit, that practically all the questions thus sought to be raised in this suit had been the subject matter of prior suits brought by plaintiff in error, the final decisions in which are reported in Patterson v. Northern Trust Co., 230 Ill. 334; Patterson v. Northern Trust Co., 231 Ill. 22, and Patterson v. Northern Trust Co., 238 Ill. 601.

The prayer of the supplemental bill sought to cancel the original ground lease and the deed of trust, the forfeiture of the building to the owners of the ground, the annulling of the decree foreclosing the lien for ground rent (although paid in full), the dissolution of the Merrimac Company, the removal of the trustee, to compel the holders of the Merrimac Company's bonds to account to complainant, and to have a receiver appointed.

The filing of a supplemental bill is largely a matter of discretion with the court. Caldwell v. Bank, 89 Ill. App. 448. Leave to file it may properly be refused if the party has been guilty of *laches,* or if the application for leave be not made "seasonably after the discovery or happening of the matter sought to be brought forward." 21 Ency. of Pl. & Pr. 53. Such a bill is properly applicable only to cases where the same parties in the same interests remain before the court. McDonald v. Asay, 139 Ill. 123. Where leave to file has been given, the court may in its discretion, upon a proper showing, order the supplemental pleading to be stricken from the files. 21 Ency. of Pl. & Pr. 78.

For these reasons, as well as for others that must be apparent from the foregoing statement of the character of, and the objects sought by, the supplemental bill, we think the court was fully justified in striking it from the files.

*Fourth.* It is claimed the court erred in dismissing the bill for want of equity. After inspecting the hundreds of exhibits containing statements and vouchers, as well as the oral testimony relating thereto, the master found and reported at length, the facts regarding the trustee's management of the property in question; that it had rendered regularly to the beneficiaries quarterly statements of account and individual statements upon request; that monthly and yearly statements of receipts and disbursements were also rendered during the time the building was in possession of the trust company under the so-called Merrimac agreement; that while receivers were in possession, quarterly statements were filed in and approved by the court; that all of the beneficiaries, except plaintiff in error, had expressed their approval of the acts and accounts of the trustee; and that the trustee had, to every reasonable extent, discharged its obligation to account to plaintiff in error. Plaintiff in error has filed here

only a *praecipe* record, which contains the master's report and the decree approving the same, with similar findings of fact, but which omits all the evidence upon which such findings are based. In Patterson v. Northern Trust Co., 230 Ill. 334, speaking of a similar record, the court said (p. 339) : "In the absence of a certificate preserving *all* the evidence it will be presumed that there was sufficient evidence to sustain the findings of the specific facts in the decree. Brown v. Miner, 128 Ill. 148; King v. King, 215 *id.* 100."

The right to an accounting by order of court in cases of this character, is not an absolute right, but is one which should be accorded only on equitable principles. It will not be ordered if the circumstances are such as to make an accounting unnecessary or improper. Woodbridge v. Bockes, 170 N. Y. 596. A demand and refusal to account are necessary to be alleged and proved in order to maintain such a suit. Wetzstein v. Boston, etc. Min. Co., 72 Pac. 865; Maguaran v. Tiffany, 62 How. Pr. 251; Kennicott v. Leavitt, 37 Ill. App. 435.

Under the facts and circumstances shown by this record, we think the court did not err in approving the master's report and dismissing the bill at the costs of the complainant. Nor do we think there was error in the allowance of master's fees.

For the reasons indicated, the decree of the Circuit Court will be affirmed.

*Decree affirmed.*