BROOKS McCORMICK, Jr., Plaintiff-Appellant, *v.* BROOKS McCORMICK, Indiv. and As Trustee of the Brooks McCormick, Jr., Trust, dated August 5, 1964, as amended *et al.*, Defendants-Appellees.

First District (1st Division)   No. 82—670

Opinion filed August 29, 1983.—Rehearing denied October 31, 1983.

D'Ancona & Pflaum, of Chicago (Barry T. McNamara and Arthur Don, of counsel), for appellant.

Wildman, Harrold, Allen & Dixon, of Chicago (Max E. Wildman, Jerald P. Esrick, Craig M. White, and Elise E. Singer, of counsel), for appellees.

JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiff, Brooks McCormick, Jr., appeals from the dismissal of his complaint against the former trustees and their agents of a trust of which plaintiff is both grantor and beneficiary. Six counts of his complaint which alleged breach of trust, waste of trust assets and conflict of interest, were dismissed with prejudice for failure to state a cause of action. On appeal, plaintiff contends that the trial court applied an

erroneous standard of review in dismissing the six counts of his complaint and that defendant Myron Ratcliffe failed to establish the validity of Ratcliffe's purported release from liability.

I

Plaintiff filed an 11-count verified amended complaint against four individuals and three corporations. The allegations of the complaint center around the construction of plaintiff's personal residence by the Brooks McCormick, Jr., trust. A brief explanation of the parties will aid the discussion of this case.

Brooks McCormick, Jr., is the settlor and sole beneficiary of the Brooks McCormick, Jr., trust dated August 5, 1964 (hereinafter referred to as "the trust"). Plaintiff established the trust with assets he received from his grandmother and directed his trustees to pay him such part of income and principal that the trustees considered advisable for plaintiff's comfortable maintenance, medical care and welfare.

Defendant Brooks McCormick is plaintiff's father and was co-trustee of the trust from its inception until December 31, 1980, when he resigned.

Defendant Miami Corporation is a personal holding company for the assets of the McCormick and Danielson families. The stock of the corporation is owned by the trusts established by the various family members, including the trust at issue here. The Miami Corporation also functions as an agent for the trustees of the family trusts and employs investment managers and accountants for this purpose. One of the assets held by the corporation is a controlling interest in the National Boulevard Bank of Chicago.

Defendant Charles Schroeder is president of the Miami Corporation and chairman of the board of the National Boulevard Bank. Schroeder served as co-trustee of plaintiff's trust from January 1, 1978, to December 31, 1980.

Defendant Myron Ratcliffe is a past president of the Miami Corporation and former chairman of the board of the National Boulevard Bank. Ratcliffe served as co-trustee of plaintiff's trust from its inception until December 31, 1977, when he retired. Ratcliffe, and Schroeder after him, acted as plaintiff's attorney-in-fact under a broad power of attorney. On May 11, 1978, plaintiff executed a release of Ratcliffe relieving him of all liability resulting from his management of the trust.

Defendant Thomas Oehring has served as an officer and employee of the Miami Corporation since August 1978. His predecessor, F.J. Hoppe, originally was named as a defendant in this case but was dis-

missed by motion at the time of his death.

Otis and Associates is the architectural firm retained by plaintiff to prepare plans for the residence and supervise its construction. Ragnar Benson, Inc., is the general contractor which plaintiff hired to build the portion of the residence referred to as "phase one."

The complaint alleges that in the summer of 1977, construction of plaintiff's personal residence began. The residence was built in Bensenville, Illinois, on property that plaintiff's trust purchased from plaintiff's father. The complaint alleges that on behalf of plaintiff and the trust, the trustees negotiated and accepted an architect's contract and a construction contract which stated that the maximum cost of building the residence would be $398,000. Payments for the residence were to be approved by the plaintiff in writing and then paid out of trust assets by the trustees. Plaintiff approved two change orders which increased the contract price to $449,542. The architect's fee was $70,000 and the land cost $365,000.

Plaintiff alleges that the defendants have authorized the spending of more than $1,900,000 on the construction of the residence; that many expenditures were made over plaintiff's stringent objections; that payments were made on work that was not authorized by change orders; that the contractor was paid for work that was not completed and that did not satisfy contractual specifications; and, that defendants gave the architect and contractor duplicate payments for the same work. Plaintiff alleges that when he objected to some of these unwarranted payments, defendants told him that such payments must be made in order to protect defendant McCormick's "reputation in the business community." The residence still has not been completed in compliance with the contract specifications and still remains incomplete and uninhabited. Plaintiff alleges that defendants' mismanagement has resulted in the investment of most of the trust assets in a nonliquid and essentially nonmarketable residence.

The verified amended complaint is 75 pages long and has approximately 150 pages of exhibits attached to it. Counts I through VI allege that the trustees of the trust, their agents and the Miami Corporation committed mismanagement and waste of trust assets. These counts were dismissed with prejudice by the trial court for failure to state a cause of action and are the basis of this appeal. Counts VIII through XI allege breach of contract and professional malpractice against the contractor and architect. These counts were severed from the rest of the complaint and have been continued in litigation. Count VII alleges that defendant McCormick built a "spite fence" adjacent to plaintiff's property and requests that defendant be enjoined to re-

move the fence and pay compensatory and punitive damages for trespass and other injury to the trust property. The court severed this count and dismissed it without prejudice because the court thought that a cause of action for trespass could be found in its allegations.

## II

■ Plaintiff contends on appeal that the trial court disregarded well established principles in dismissing the first six counts of his complaint. Since defendants attacked plaintiff's allegations under section 45 for failure to state a cause of action, the veracity of the allegations was not at issue. Plaintiff contends that on the motion to dismiss the trial court improperly compared the allegations in the complaint with inferences as to the facts that the court made after reviewing the exhibits. Where the exhibits did not support plaintiff's allegations or suggested different facts than those in the complaint, the court determined that the complaint failed to state a cause of action. Plaintiff asserts that the exhibits were attached to the amended complaint at the court's request as examples of defendants' misconduct and do not represent all the proof plaintiff intends to present at trial. Plaintiff also argues that the trial court's decision extends beyond that requested by defendants since defendants did not claim that count I failed to state a cause of action for an accounting and for breach of trust.

Defendants contend that the trial court correctly determined that where the averments in the complaint conflict with the averments in the attached exhibits, the averments in the complaint are negated. Defendants argue that although generally the complaint is considered in the light most favorable to the pleader, when exhibits are attached to the complaint they are viewed strictly against the pleader. Plaintiff replies that in those cases which have held that averments in an exhibit attached to the complaint control the complaint, the exhibit in question was a legally operative instrument, a plain admission or an authoritative recording of a legally operative fact. Further, in the cases on this point, the exhibit plainly contradicted the relevant allegations in the complaint. Plaintiff claims that other than the trust instrument, the exhibits attached to the complaint have no controlling legal effect over plaintiff's claim and do not contradict any relevant factual allegations. The exhibits consist primarily of memoranda and letters written by the defendants. Plaintiff argues that in dismissing the complaint the trial judge did not rely on legally operative facts but rather on inferences and characterizations gleened from a review of the group of exhibits.

A motion brought under section 45 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 45) admits as true all well-pleaded facts. Its purpose is to raise an issue of law as to the legal sufficiency of the allegations of the complaint. (*Ostendorf v. International Harvester Co.* (1982), 89 Ill. 2d 273, 280, 433 N.E.2d 253, 256.) A cause of action should not be dismissed unless it clearly appears that no set of facts can be proved which will entitle plaintiff to recover. (*Fitzgerald v. Chicago Title & Trust Co.* (1978), 72 Ill. 2d 179, 380 N.E.2d 790.) Illinois is a fact-pleading State. Therefore, although pleadings are liberally construed and formal or technical allegations are not necessary, a complaint must contain facts necessary to state a cause of action. (*People ex rel. Fahner v. Carriage Way West, Inc.* (1981), 88 Ill. 2d 300, 430 N.E.2d 1005.) Only ultimate facts to be proved should be alleged and not the evidentiary facts tending to prove such ultimate facts. *Carriage Way West.*

Section 36 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 36) provides that when a written instrument is attached to a complaint as an exhibit either because the claim is founded on the instrument or the instrument is pled, the exhibit constitutes a part of the pleading for all purposes. A motion to strike a complaint does not admit as true those allegations in the complaint which conflict with facts disclosed in the exhibits. (*Sangamon County Fair & Agricultural Association v. Stanard* (1956), 9 Ill. 2d 267, 137 N.E.2d 487.) Where the averments in an exhibit attached to a complaint conflict with the allegations of the complaint, they negate such allegations. *Laster v. Chicago Housing Authority* (1982), 104 Ill. App. 3d 540, 543, 432 N.E.2d 1185, 1187.

Section 36 by its terms applies to documents upon which a claim is founded. The trust document is such an exhibit. Therefore, the trial court properly could conclude that the trust document constituted a part of the pleadings for all purposes. If any allegations in the complaint conflict with the terms of the trust instrument, those allegations in the complaint are negated. (*Laster.*) Defendants, however, have not presented any authority for the position that this principle applied to exhibits which are attached to the complaint by way of example of the evidence supporting plaintiff's allegations. In those cases which have held that an exhibit controls over facts alleged in the complaint, the exhibit in issue was either the instrument being sued upon (see *Sharkey v. Snow* (1973), 13 Ill. App. 3d 448, 300 N.E.2d 279), a sworn affidavit (*Fowley v. Braden* (1954), 4 Ill. 2d 355, 360, 122 N.E.2d 559, 562), or, an official public document (*Sangamon*). In *Fowley,* the court stated that it was "not prepared to say that in every

case an exhibit will control over inconsistent allegations in the pleading of which it is a part." 4 Ill. 2d 355, 360, 122 N.E.2d 559, 562.

We note that the trial court requested plaintiff to attach exhibits to his amended complaint. We also note that with the exception of the trust instrument itself, the exhibits here are not conclusive evidence that the facts are contrary to the allegations in the complaint. The trial court erred in determining the legal sufficiency of the complaint by comparing the factual allegations of the complaint with inferences the court made after reviewing the numerous exhibits. The fact that the trial court applied an erroneous legal standard to determining the motion to dismiss is apparent from the written opinion which contains a section entitled "findings of fact." A pleading must show only the possibility of recovery, not an absolute certainty, and it should not be dismissed unless it manifestly appears that the pleader in no event would be permitted to recover. (*Neuman v. City of Chicago* (1982), 110 Ill. App. 3d 907, 913, 443 N.E.2d 626.) With these principles in mind we will examine the sufficiency of the allegations in each count of the complaint.

## III

■ Count I of plaintiff's complaint charges defendants McCormick, Ratcliffe, Schroeder, Oehring and the Miami Corporation with breach of trust. The count requests an accounting, a declaration of rights, compensatory damages and punitive damages. The trial court neglected to make any finding with respect to the sufficiency of plaintiff's allegations that he was entitled to an accounting of trust expenditures for the building of the residence.

Plaintiff asserts that his allegations are sufficient to entitle him, the beneficiary of the trust, to an accounting by the former trustees and their agents. Defendants contend that where a successor trustee exists to compel an accounting if needed, the beneficiary has no right to an accounting. Defendants, however, have not presented any authority for this position. It has been established that providing his purpose is proper, a beneficiary has the right to inspection on demand to see that the trust is properly executed. (*Wallace v. Malooly* (1954), 4 Ill. 2d 86, 122 N.E.2d 275.) In *Wallace*, the court quoted a commentary from Restatement of Trusts sec. 173 (1935) which stated: " '*** the beneficiary is always entitled to such information as is reasonably necessary to enable him to enforce his rights under the trust or to prevent or redress a breach of trust.' " (4 Ill. 2d 86, 95, 122 N.E.2d 275, 280.) The beneficiary of a trust is entitled to learn from his trustee "what property has come into his hands, what has passed out

and what remains therein, including all receipts and disbursements in cash, and the sources from which they came, to whom paid and for what purpose paid." (*Wylie v. Bushnell* (1917), 277 Ill. 484, 491, 115 N.E. 618, 622.) The beneficiary's right to obtain necessary information from the trustees is broad. (*Wallace.*) When a party seeks an accounting, the trial court must make two separate and distinct determinations: that an accounting is required and that a sum certain is due. These determinations are traditionally made in separate hearings with separate discovery phases. *Schane v. Conrad* (1979), 68 Ill. App. 3d 961, 386 N.E.2d 431.

Defendants further object to an accounting because they argue that the complaint does not allege that an accounting was demanded and refused. Plaintiff's complaint alleges that "plaintiff has corresponded with defendant trustees and agents through their counsel demanding a written accounting of the status of the construction and that defendants refused to account to plaintiff." Plaintiff's allegations of breach of trust and refusal to account to him upon his demand are sufficient to withstand a motion to dismiss. *Patterson v. Northern Trust Co.* (1912), 170 Ill. App. 501, 516.

Defendants also argue that the court ordered accounting which plaintiff seeks is somehow similar to, or satisfied by, the petition for approval of accounts filed by McCormick and Schroeder and tendered to plaintiff. That petition was filed several days before plaintiff filed his complaint and was stayed pending the outcome of this suit. Whether these documents are so complete and correct as to make plaintiff's demand for an accounting unreasonable and unnecessary are questions of fact and not properly a determination to make on a motion to dismiss. See *Patterson; Havana National Bank v. Wiemer* (1975), 32 Ill. App. 3d 578, 335 N.E.2d 506.

■ Additionally, count I seeks damages from negligent breach of trust in an amount to be determined by the accounting. In dismissing this count the trial court determined that, based upon the exhibits, the trustees had used their best judgment in making disputed payments to the contractor. The court concluded that plaintiff was intimately involved with the construction of the residence and cannot now complain that the trustees did not further scrutinize the construction.

Trustees have the obligation to carry out the trust according to its terms, to use care and diligence in protecting and investing trust property and to use perfect good faith. (*Chicago Title & Trust Co. v. Chief Wash Co.* (1938), 368 Ill. 146, 155, 13 N.E.2d 153, 157.) Plaintiff has alleged several acts by which the trustees breached their duties as

trustees including the payment of disputed bills in order to protect defendant McCormick's reputation in the business community. In light of the high standards to which a trustee is held, plaintiff's allegations sufficiently state a cause of action for breach of trust.

■ Count II alleges waste of trust assets by plaintiff's trustees and their agents. Plaintiff alleges that defendants breached the trustees' duty to exercise sound judgment as to tax considerations, types of investments and indebtedness appropriate to the trust in order to maintain the corpus of the trust and product sufficient income for plaintiff's livelihood. Specifically, plaintiff alleges that the trustees borrowed money at a variable prime interest rate rather than choosing a far less expensive means available for financing a residence such as a standard home mortgage. Count II also alleges unwarranted selling or pledging of various income producing properties in the trust by the trustees. The trial court relied upon an exhibit which was a letter from Oehring to Schroeder discussing the advantages of obtaining a mortgage, to conclude that "it is clear from this exhibit that the trustees engaged in 'an honest exercise of a discretionary power.' "

Plaintiff argues that count II contains explicit allegations of the trustees' duties, the breach of those duties and the resulting damages to the trust. Defendants argue that there are no specific allegations of how the method of financing created an unreasonable burden on the trust. Also, they argue that plaintiff cannot shift the legal responsibility for the construction financing onto his former trustees.

On a motion to dismiss, plaintiff's allegations that the trustees accepted responsibility for and controlled the financing of the residence must be taken as true. A "prudent man" standard governs the trustees' actions under Illinois law. By statute, a trustee has the duty to exercise:

> "the judgment and care under the circumstances then prevailing, which men of prudence, discretion and intelligence exercise in the management of their own affairs, not in regard to speculation but in regard to the permanent disposition of their funds, considering the probable income as well as the probable safety of their capital." (Ill. Rev. Stat. 1965, ch. 148, par. 32, repealed in 1973 and replaced by Ill. Rev. Stat. 1981, ch. 17, par. 1675.)

Plaintiff's allegations that defendants chose a more expensive means of financing the residence and have burdened the trust with unreasonable interest payments adequately states a cause of action for failure to reasonably exercise their discretion in management of the trust.

■ In count III plaintiff alleges that his trustees breached their fiduciary duties by delegating judgmental and discretionary functions

and responsibilities to their agents. Plaintiff relies upon *In re Hartzell* (1963), 43 Ill. App. 2d 118, 192 N.E.2d 697, where the court held that although purely ministerial duties may be delegated by a trustee, generally a trustee may not delegate powers and duties involving the exercise of judgment and discretion. The trial court rejected count III because among the powers the trust instrument grants to the trustees is the power "to employ agents and counsel, including investment counsel, and delegate to them *any* powers of the trustees." (Emphasis added.) We note that count III does not allege that the trustees failed to use proper discretion in choosing their agents, nor does it allege that the trustees in any way exceeded their powers to delegate by failing to continue to exercise discretion in watching over the trust. (See *Local Union No. 422 v. First National Bank* (1981), 93 Ill. App. 3d 890, 417 N.E.2d 1077.) Rather, plaintiff alleges that the trustees unlawfully delegated their responsibilities because they delegated judgmental and discretionary functions. Yet no such limitation on the trustees' power to delegate is found in the trust instrument. Authority to delegate powers and the conditions for delegation may be granted to a trustee by an express clause in the trust instrument. (Bogert, Trusts & Trustees sec. 555, at 119-20 (2d ed. 1980).) The trial court did not err in determining that plaintiff's complaint, when viewed in conjunction with the trust document, fails to allege a cause of action for unlawful delegation.

Plaintiff also alleged that the agents, by accepting unlawfully delegated discretionary and judgmental functions, became trustees *de son tort* and, therefore, are liable as trustees for any breach of trust committed. (See *Penn v. Fogler* (1899), 182 Ill. 76, 96, 55 N.E.192, 197; *Lehmann v. Rothbarth* (1884), 111 Ill. 185, 195.) Since plaintiff's claim that the trustees unlawfully delegated their powers under the trust instrument does not state a cause of action, the claim against the agents for accepting the unlawfully delegated functions also fails.

■ Count IV alleges that Ratcliffe and Schroeder are professional trustees; that at the time of the events relevant to this lawsuit Ratcliffe was chairman of the board of the National Boulevard Bank and Schroeder was one of its directors; that as trustees they had a duty to use perfect good faith; and, that in breach of that duty they borrowed money for the construction of the residence from the bank for which they worked. Defendants argue that the trust document specifically allows the trustees to deal on behalf of the trust with corporations for which a trustee may be a director, officer or employee.

We note that it has been held that where acts which would ordinarily be viewed as conflict of interest are contemplated, created or

sanctioned within a trust instrument, as they are here, the trustee has no liability for following the trust's directives. (*Childs v. National Bank* (7th Cir. 1981), 658 F.2d 487, 490.) Thus if count IV is read to allege a breach of fiduciary duty for self dealing, the count must fail because the act complained of, borrowing from the National Boulevard Bank, was sanctioned by the trust instrument. Count IV also an be read to allege a breach of fiduciary duty for choosing an unreasonable and expensive means of financing the residence. If so read, this count merely restates the allegations of count II and may be stricken as redundant. Ill. Rev. Stat. 1979, ch. 110, par. 33(1).

In count V plaintiff sought damages from the trustees for their failure to sue the architect and the contractor of the residence. Plaintiff has not addressed the issue of the trial court's dismissal of count V except *in passum*. Consequently, we will consider this issue waived.

Plaintiff alleges in count VI that Schroeder and Ratcliffe breached their duties as plaintiff's attorneys-in-fact in the same manner and to the same extent as they breached their trust duties as set forth in counts I through V. Plaintiff alleges that he executed a broad power of attorney as a consequence of his status as a principal and stockholder of the Miami Corporation. Every stockholder executed a similar power of attorney naming the then president of the corporation as his attorney-in-fact.

Defendants argue that the duties owed a principal by an agent under a power of attorney are not identical to those owed under a trust instrument. An alleged breach of trust cannot be asserted as the basis for a breach of a power of attorney. We agree. The acts complained of in counts I through V concerned actions taken with respect to trust corpus. Any act which Ratcliffe and Schroeder took with respect to trust property could only have been taken under their powers as plaintiff's trustees and not under their powers as attorneys-in-fact. Therefore, by merely repeating the allegations which allegedly showed defendants' breach of trust, plaintiff has failed to state a cause of action for breach of the principal-agent relationship under the power of attorney.

## IV

Pursuant to section 48(1)(f) of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 48(1)(f)), defendant Ratcliffe moved for his dismissal from this lawsuit on the grounds that he had been released from liability for his acts as a trustee. Ratcliffe served as trustee from the inception of the trust until he resigned on December 31, 1977. On May 11, 1978, plaintiff executed a written "ratification and release"

which ratified and approved every act of Ratcliffe as trustee and released him from any liability arising out of his management of the trust. Plaintiff alleged in his complaint that the instrument was procured without consideration, that defendant never explained the effect of the release nor advised plaintiff to obtain independent counsel, and that contrary to the documents' recitals, plaintiff was never given trust documents to review prior to signing the release. Defendant's motion alleged that plaintiff had executed a valid release and that plaintiff's allegations were insufficient to raise an issue as to the validity of the release. The trial court found that absent any allegations of fraud or coercion in the procurement of the release, plaintiff was foreclosed from challenging this apparently valid instrument.

On appeal, plaintiff argues that because of the fiduciary relationship between a trustee and a beneficiary, the release of a trustee must meet special requirements before it will be held valid. Such a release, plaintiff contends, carries a presumption of fraud and consequently, the burden of proving that the release was fair and did not proceed from undue influence rests with the trustee. Defendant contends that since he did not receive compensation for his services on behalf of a trust and did not receive any other benefit as a result of the administration of the trust, there is no presumption of fraud.

Once the existence of a release has been established, the party opposing its use had the burden of attacking its validity. (*Blaylock v. Toledo, Peoria & Western R.R. Co.* (1976), 43 Ill. App. 3d 35, 37, 356 N.E.2d 639, 641.) The defenses which may be asserted to vitiate a release include fraud in the execution, fraud in the inducement, mutual mistake and mental incompetence. (*Blaylock.*) Plaintiff had not alleged facts sufficient to establish any of these defenses.

A release between a trustee and a beneficiary, like all transactions growing out of a fiduciary relationship, is subject to the closest scrutiny. (*Pennington v. Jones* (1977), 46 Ill. App. 3d 65, 360 N.E.2d 566.) A fiduciary relationship exists between trustee and beneficiary as a matter of law. At the time the release was signed, however, the fiduciary relationship no longer existed as a matter of law. (*Collins v. Nugent* (1982), 110 Ill. App. 3d 1026, 443 N.E.2d 277.) Moreover, plaintiff has not alleged facts which would tend to show that the relationship continued in any way. Thus the release is not subject to the presumption of fraud which accompanies transactions between fiduciaries. The trial court did not err in dismissing defendant Ratcliffe from plaintiff's suit.

In conclusion, the decision of the circuit court of Cook County in dismissing plaintiff's complaint is reversed with respect to count I and

II. In all other respects, the decision of the circuit court is affirmed.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

BUCKLEY, P.J., and McGLOON, J., concur.