In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-1174

JOHN C. WOOLARD,

*Plaintiff-Appellee,*

*v.*

ROBERT C. WOOLARD,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:05-cv-07280—**Martin C. Ashman,** *Magistrate Judge.*

ARGUED SEPTEMBER 23, 2008—DECIDED OCTOBER 29, 2008

Before BAUER, CUDAHY and WILLIAMS, *Circuit Judges.*

BAUER, *Circuit Judge.* In this diversity action, John C. Woolard (Plaintiff) sued his uncle Robert C. Woolard (Defendant) for mismanaging a trust established by Plaintiff's father for which Defendant was the trustee. The district court granted Plaintiff's motion for summary judgment, holding that Defendant breached the express terms of the trust and also violated his statutory and fiduciary duties under Illinois. We affirm.

## I. BACKGROUND

Plaintiff's father, John F. Woolard, established the John C. Woolard Present Interest Trust in 1983 for his infant son. Plaintiff was the Trust's sole beneficiary and Defendant, the settlor's brother, agreed to serve as Trustee. The terms of the Trust permitted Defendant to distribute the income and principal of the Trust for the sole benefit of Plaintiff. The Trust provided that payment of income or principal to a minor

> may be applied directly in the sole discretion of the Trustee for the benefit of such person or may be made to any one or more of the following: (a) directly to such beneficiary; (b) to the legally appointed guardian . . . of such beneficiary; or (c) to a custodian under the Uniform Gifts to Minors Act in any jurisdiction.

The Trust Agreement allowed Defendant to loan "any part of the trust property to any person (other than [Plaintiff's father]) or entity upon adequate security and at current interest rates."

Plaintiff's father initially funded the Trust with $500, but at one point it contained over $800,000. When Plaintiff's father died in 2002, the value of the Trust was approximately $18,000. It is uncontested that between 1990 and 2001, Defendant distributed more than $850,000 to Plaintiff's father, including over $300,000 in one six-month period. Defendant kept no record of the purposes for which the funds were distributed and never requested or received any receipts from Plaintiff's father indicating how the funds were benefitting Plaintiff. Defendant claims

he believed the distributions were being applied for Plaintiff's benefit, but does not deny that he made the disbursements without any specific knowledge regarding how Plaintiff's father would use the funds.

The district court held that distributing funds to Plaintiff's father was an express violation of the terms of the trust. The court also found that Defendant's failure to keep any substantive records regarding the purposes of the distributions violated his duties under the Illinois Trusts and Trustees Act. Finally, the district court held that Defendant breached his fiduciary duties by failing to take reasonable steps to ensure that the Trust's assets were used according to the Trust's purpose and solely for Plaintiff's benefit. Because a trustee who breaches the terms of a trust agreement is personally liable for any losses that result from the breach, judgment was entered against Defendant in the amount of the wrongful distributions plus interest. *Grot v. First Bank of Schaumburg*, 684 N.E.2d 1016, 1018 (Ill. App. Ct. 1997) (citation omitted).

## II. DISCUSSION

On appeal, Defendant argues that the district court erred in finding the distributions to Plaintiff's father violated the terms of the Trust, that the district court ignored an exculpatory clause in the Trust Agreement providing for trustee liability only in the case of bad faith, and that there were adequate records of the Trust activity. We review a district court's grant of summary judgment *de novo*. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008) (citations omitted). Summary judgment is

appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). We view the record in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Darst*, 512 F.3d at 907 (citation omitted). Illinois law governs Defendant's liability in this diversity action.

### A. Distributions to Plaintiff's Father

Defendant first claims that distributing the Trust's assets to Plaintiff's father complied with his duties as Trustee. Defendant argues that the Trust Agreement granted him discretion to distribute funds to Plaintiff's father and that the Illinois Trusts and Trustees Act endowed him with authority to distribute funds to Plaintiff's father as an adult relative of the minor beneficiary. Defendant also contends that since Plaintiff's father had a legal duty to support his son, it was appropriate to distribute the funds to Plaintiff's father and it should be presumed that Plaintiff benefitted from the funds. Plaintiff contends that this case turns simply upon a violation of the express and exclusive terms of the Trust, which did not allow for distributions to his father.

"It is axiomatic that the limits of a trustee's powers are determined by the instrument which creates the trust." *Stuart v. Continental Ill. Nat'l Bank & Trust Co.*, 369 N.E.2d 1262, 1271 (Ill. 1977) (citations omitted). "When a trustee fails to administer a trust according to its terms, a breach of trust results." *Northwestern Mut. Life Ins. Co. v. Wiener*, 421 N.E.2d 1002, 1004 (Ill. App. Ct. 1981) (citation omitted).

"When a trustee breaches a trust agreement, whether wilfully, negligently, or by oversight, he is liable for any loss to the estate resulting from the breach and must place the beneficiaries in the position they would have held had the breach not occurred." *Grot*, 684 N.E.2d at 1018 (citations omitted).

The Trust Agreement provided that distributions to a minor

> may be applied directly in the sole discretion of the Trustee for the benefit of such person or may be made to any one or more of the following: (a) directly to such beneficiary; (b) to the legally appointed guardian . . . of such beneficiary; or (c) to a custodian under the Uniform Gifts to Minors Act in any jurisdiction.

None of the money was distributed directly to Plaintiff and there was no legally appointed guardian or custodian. Defendant contends that the district court ignored the provision allowing distributions to be "applied directly in the sole discretion of the Trustee for [Plaintiff's benefit]."[1] Defendant argues that by giving money to

---

[1] Defendant repeatedly asserts that the Trust Agreement gave the trustee discretion and that discretionary decisions by a trustee should not be overturned absent bad faith, fraud, or an abuse of discretion. Defendant's commentary, while true, is irrelevant. Plaintiff's complaint, and the district court's judgment did not regard a discretionary decision; they involved a breach of the express terms of the Trust. A trustee does not

(continued...)

Plaintiff's father he was directly applying the money for Plaintiff's benefit. Defendant's position is that it was a direct application of funds for him to give money to Plaintiff's father and for Plaintiff's father to then give that money (likely without Defendant's knowledge) to Colgate University, for example, to pay for Plaintiff's college tuition. This proposal cannot be accepted. The existence of an intermediary makes it impossible to characterize this two-part transaction as a direct application of funds. Defendant cannot find justification for the distributions within the terms of the Trust Agreement.

Defendant next contends that the distributions were permitted by the Illinois Trusts and Trustees Act. The Act grants a trustee authority

> [t]o distribute income and amounts of principal in such one or more of the following ways as the trustee believes to be for the best interests of any beneficiary who at the time of distribution is under legal disability or in the opinion of the trustee is unable properly to manage his affairs because of illness, physical or mental disability or any other cause:
>
>     (a) directly to the beneficiary;
>
>     (b) to a duly appointed guardian of the beneficiary;

---

[1] (...continued)
have discretion to violate the trust agreement, nor does a trustee's interpretation of the trust agreement define the bounds of permissible conduct.

(c) to a custodian for the beneficiary under the Uniform Transfers to Minors Act;

(d) to an adult relative of the beneficiary;

(e) by expending the money or using the property directly for the benefit of the beneficiary; and the trustee is not required to see to the application of any distribution so made; and

(f) to a trust, created prior to the time the distribution becomes payable, for the sole benefit of the beneficiary and those dependent upon the beneficiary during his or her lifetime, to be administered as a part thereof . . . .

760 ILCS 5/4.20. Defendant focuses on paragraph (d), allowing distribution to an adult relative of the beneficiary. Were it applicable to this case, paragraph (d) would provide authority to distribute the Trust's assets to Plaintiff's father while Plaintiff was a minor, and thus under a legal disability. However, the Trusts Act merely establishes a set of default rules applicable when not in conflict with the terms of a trust agreement. The Act provides:

> A person establishing a trust may specify in the instrument the rights, powers, duties, limitations and immunities applicable to the trustee, beneficiary and others and those provisions where not otherwise contrary to law shall control, notwithstanding this Act. The provisions of this Act apply to the trust to the extent that they are not inconsistent with the provisions of the instrument.

760 ILCS 5/3(1).

Defendant claims that the terms of the Act are not in conflict with the terms of the Trust. Defendant is mistaken. Comparing the language of the Trust Agreement to that of the Act only confirms that Plaintiff's father was not an authorized distributee of the Trust. The Trust Agreement mirrored paragraphs (a), (b), (c), and (e) of the Trusts Act, but excluded the option to distribute money to an adult relative and the option to distribute to a related trust. These were intentional omissions. *Inclusio unius est exclusio alterius.* The Trust Agreement also specifically and uniquely excluded Plaintiff's father from receiving loans, at any interest rate, and despite providing adequate security. The district court came to the natural and appropriate conclusion that "the settlor, Plaintiff's father, took pains to protect the Trust's assets from his own intermeddling" and his "obvious intent [was] to use the trust as a preventive barrier against his own financial management." The Trust Agreement anticipated and provided for distributions to, or for the benefit of, minors; the conflicting provision of the Trusts Act, allowing distributions to an adult relative, does not apply to this case.

Defendant finally argues that it was logical and appropriate to give the Trust's assets to Plaintiff's father as the person with the legal duty to support Plaintiff. This argument does not require serious discussion. Defendant cannot avoid his specifically enumerated duties and limitations under the Trust Agreement by pointing to the common law duty of parents to support their children. Similarly, it does not matter whether Defendant believed the money was benefitting Plaintiff and furthering the

intent of the settlor; the Trust Agreement simply did not allow distributions to Plaintiff's father.

Defendant was not authorized to distribute funds to Plaintiff's father by the terms of the Trust, by the Illinois Trusts and Trustees Act, or by any vague common sense approach. By distributing funds to Plaintiff's father, Defendant breached the express terms of the Trust and the district court appropriately held Defendant liable for the resulting losses.

### B. Exculpatory Clause

In his brief, Defendant asserts that the district court erroneously ignored an exculpatory clause in the Trust Agreement that limits a trustee's liability to acts or omissions committed in bad faith. Plaintiff contents that Defendant waived this provision because it was raised for the first time on appeal. Plaintiff also asserts that there is sufficient evidence of bad faith in the record to hold Defendant liable even assuming the validity of the exculpatory clause. Finally, Plaintiff argues that the clause cannot shield Defendant from violations of his fiduciary duties, which are not imposed by the Trust Agreement, but by Illinois law.

Without citation, Defendant vaguely claims, "[t]he lower court acknowledged the existence of [the exculpatory clause], but so restricted its application as to render it completely ineffective." However, there is no evidence that the district court was made aware of this exculpatory clause, let alone that it "acknowledged" it.

Defendant does not identify when he alerted the district court to the exculpatory clause, or where he relied on it in his arguments below.[2] Because Defendant never raised the issue of the exculpatory clause before the district court, he has waived it for purposes of review. *See Libertyville*, 776 F.3d at 737.

What Defendant did argue before the district court, and what Defendant wrongly seems to conflate with a discussion of the exculpatory clause, was that, as a matter of Illinois common law, "discretionary decisions by trustees are not to be overturned in the absence of extenuating circumstances such as bad faith, fraud, or an abuse of discretion" (citations omitted). The district court did address this issue by stating that, "the Court disagrees with defendant's view of the scope of the powers and duties of a trustee."[3] Defendant's reliance on discretion is misplaced in this case where distributing money to Plaintiff's father was not a decision within the discretion

---

[2] Defendant's assertion that it was the district court's job to give effect to "the whole document, not just isolated parts," is misplaced. "[T]he district court need not investigate the evidence for arguments that might possibly support [Defendant's] claim: it was [*Defendant's*] responsibility to raise the *argument* that it seeks to use now on appeal." *Libertyville Datsun Sales, Inc. v. Nissan Motor Corp.*, 776 F.2d 735, 737 (7th Cir. 1985).

[3] The district court found that assuming, for the purpose of Defendant's motion for summary judgment, bad faith was required to hold Defendant liable, there was sufficient evidence of bad faith for a reasonable jury to find in Plaintiff's favor, thereby defeating Defendant's motion.

of the Trustee. As the district court explained, even if Defendant believed the money was being used for Plaintiff's benefit (so that Defendant was arguably acting in good faith), "the trust agreement did not authorize distributions to Plaintiff's father," entitling Plaintiff to judgment as a matter of law. Having found that Defendant waived the issue of the exculpatory clause by failing to raise it below, it is unnecessary to discuss Plaintiff's other arguments regarding the insignificance of this clause.

## C. Adequate Records

Defendant contends he maintained adequate records of the Trust activity. Defendant's main arguments on appeal are that (1) monthly brokerage statements from the sole brokerage account used by the Trust log every transfer in and out of the Trust account; and (2) Plaintiff's father had access to these records on an ongoing basis and Plaintiff now has copies of all of the monthly statements.[4] Plaintiff contents that the brokerage state

---

[4] Defendant claims that Plaintiff's action for an accounting, which was filed as Count I of Plaintiff's original complaint, was "essentially abdicated" by Plaintiff and that "no relief was granted" on that count because Plaintiff has records of all transfers into and out of the Trust. In fact, Plaintiff agreed to dismiss his action for an accounting because it became clear that there simply are no more records to be had. The action was dismissed for impossibility, not because the records were

(continued...)

ments are insufficient records because they do not indicate the purposes of the distributions as required by Illinois law.

The Illinois Trusts and Trustees Act establishes that, "[e]very trustee at least annually shall furnish to the beneficiaries . . . a current account showing the receipts, disbursements and inventory of the trust estate." 760 ILCS 5/11(a). In Illinois, a beneficiary is entitled "to learn from his trustee 'what property came into his hands, what has passed out, and what remains therein, including all receipts and disbursements in cash, and the sources from which they came, to whom paid and for what purpose paid.'" *McCormick v. McCormick*, 455 N.E.2d 103, 109 (Ill. App. Ct. 1983) (citing *Wylie v. Bushnell*, 115 N.E. 618, 622 (Ill. 1917)). Failing to maintain adequate records is a significant issue, not only because it constitutes an independent cause of action, but also because "[w]here there has been a negligent failure to keep trust accounts, all presumptions will be against the trustee upon a settlement; obscurities and doubts being resolved adversely to him." *First Nat'l Bank & Trust Co. of Racine v. Vill. of Skokie*, 190 F.2d 791, 796 (7th Cir. 1951) (citing *Crimp v. First Union Trust & Sav. Bank*, 185 N.E. 179, 183 (Ill. 1933)).

Defendant's argument is off target and does not require lengthy discussion. The district court did not focus on a lack of access to existing documents, but rather on

---

[4] (...continued)
complete or because Plaintiff lacked a right to the information sought.

the non-existence of documents to which Plaintiff was entitled. There being no dispute as to the absence of any record indicating the purposes for the various distributions, the district court properly found that Defendant violated his duty under Illinois law to provide adequate records to Plaintiff as beneficiary of the Trust.

### D. Fiduciary Duty

Defendant never squarely addresses the district court's holding that Defendant breached his fiduciary duties. Rather, Defendant simply contends that the district court found a breach of fiduciary duty *because* it found Defendant failed to keep adequate records. However, as is clear from the district court's opinion, Defendant's abdication of his duties as Trustee goes beyond his failure to keep adequate records. "Trustees have the obligation to carry out the trust according to its terms, to use care and diligence in protecting and investing trust property and to use perfect good faith." *McCormick*, 455 N.E.2d at 110 (citation omitted). Defendant made no serious attempt to ensure that the Trust was carried out according to its terms. Far from receiving or maintaining any documentation, Defendant never *asked* Plaintiff's father for receipts indicating how the funds were being used. As the district court noted, "it is undisputed that Defendant did not know with any specificity what Plaintiff's father was doing with the Trust's money" and, "[e]ven accepting Defendant's version of events, it appears that his efforts to ensure that the funds were being used for Plaintiff's benefit were limited to [in his

own words] 'verbal conversations that he had with his brother about the purpose of various distributions.' " It is particularly telling that Defendant disbursed over $300,000 to Plaintiff's father through a series of distributions in one six-month period when Plaintiff was seventeen years old. Beyond lacking any documentation of how this money was actually used, Defendant has no evidence, even his own testimony, specifically identifying the intended purposes of these distributions.

"The law requires that a trustee must act in good faith in the management of all matters relating to the trust, and employ such vigilance, sagacity and diligence as prudent men of intelligence ordinarily employ in their own affairs." *Suffolk v. Leiter*, 261 Ill. App. 82 (1931). By having, in his own words, "no idea what they were doing with the money," Defendant was not appropriately vigilant; by not asking for any verification that the money was being spent in an appropriate manner, Defendant breached his obligation to be diligent. It is hard to imagine Defendant would have been so relaxed and disinterested were his own money involved. Indeed, now that his own money is involved, Defendant is interested enough to appeal his case to this Court. Defendant's demonstrated lack of concern that the Trust's assets solely benefitted Plaintiff, and therefore his lack of concern that the Trust's purpose was fulfilled, violated his fiduciary duties.

## III.  CONCLUSION

For the reasons set forth above, we AFFIRM the district court's grant of summary judgment.