CHICAGO CITY BANK AND TRUST COMPANY, as Successor Trustee, Plaintiff-Appellee, v. GERTRUDE PICK LESMAN *et al.*, Defendants-Appellants.

First District (6th Division)   No. 1—88—0220

Opinion filed July 21, 1989.—Rehearing denied August 17, 1989.

John Albert Pick, of Lake Worth, Florida, appellant *pro se.*

Baker & McKenzie, of Chicago (Michael J. Garvey, of counsel), for appellee.

JUSTICE QUINLAN delivered the opinion of the court:

The plaintiff, Chicago City Bank and Trust Company (the Bank), acting as the trustee for a trust established by Albert Pick, Sr., filed a complaint in the chancery division of the circuit court of Cook County, for instructions concerning the identification of remainder beneficiaries and the distribution of the remaining funds in the trust. Thereafter, one of the remainder beneficiaries, John Albert Pick (John A.) filed a *pro se* counterclaim against the Bank in which he alleged that the Bank had breached its fiduciary duties to him and the other beneficiaries, and, based on the allegations, he requested an accounting. The Bank moved to dismiss the counterclaim and requested fees and

costs. Subsequently, the trial court dismissed the counterclaim and awarded attorney fees and costs to the Bank, to be paid out of the trust. John A. appeals the dismissal of his counterclaim and the award of fees and costs. We affirm.

In 1946, Albert Pick, Sr., set up a $25,000 trust for his son, John L. Pick (John L.), who was to receive $100 a month from the trust for the rest of his life.[1] John L., the income beneficiary of the trust, died intestate in 1983. Apparently, the terms of the trust were somewhat ambiguous concerning the designation of the remainder beneficiaries and the distribution of the remainder of the trust, and so, to avoid the costs of litigation, the Bank sought an agreed settlement from those who apparently would be the remainder beneficiaries about the distribution of the remaining funds in the trust, which was about $30,000.

John A., John L.'s son, identified by the Bank as a remainder beneficiary, refused to agree to this settlement until a full accounting was proffered by the trustee for the entire 34-year history of the trust. John A. asserted that there was some type of fraud or mismanagement and collusion in the administration of the trust because only $30,000 remained. The Bank refused John A.'s demand for an accounting, and when John A. still refused to agree to the proposed distribution, the Bank informed him that the matter would have to be resolved in court.

The Bank then filed the present complaint for instructions, asking the court to interpret the ambiguous terms of the trust and to determine who the remainder beneficiaries were and what the proper distribution of the remaining funds in the trust should be. John A., as

---

[1] A brief background of the facts surrounding the creation of the trust and the income beneficiary of the trust, John L., is helpful in order to understand the nature of this case. Albert Pick, Sr., of the Pick hotel chain, became estranged from his son, John L., who apparently was constantly in some type of trouble. Despite this falling out, Albert evidently wanted to provide John L. with some income for the rest of John L.'s life, and so, Albert set up a $25,000 trust with Metropolitan Trust Company as the trustee, for the lifetime benefit of John L., and John L. was to receive $100 per month for the rest of his life. In 1948, John L. got into trouble with the law and was charged with armed robbery. Apparently, in connection with the armed robbery charges, later that year John L. was adjudged by a Los Angeles court to be insane and committed to a State hospital. In 1949, John L. escaped from the State hospital.

When the trustee found out that John L. had been adjudged insane, it stopped payments and informed Albert's attorney that it would only make the payments to a conservator. Thus, in 1951, Edward Metzel, a colleague of Albert's attorney, became the conservator. In 1957, Metropolitan resigned as trustee and Chicago City Bank and Trust Company was appointed the new trustee. Throughout his lifetime, John L. had several wives and children, and one of them was a son named John Albert Pick (John A.).

noted, responded by filing a *pro se* counterclaim, and then an amended counterclaim, against the Bank which basically alleged malicious and fraudulent breach of fiduciary duty. John A. also requested a full accounting of the trust and damages in excess of $5 million for economic loss and emotional distress, as well as punitive damages. In addition to these claims, John A. also filed a third-party complaint against Metzel, the conservator, and others. This third-party complaint against the conservator and others was later transferred to the probate division on April 30, 1987.

The Bank filed a section 2—611 motion for sanctions based on John A.'s counterclaim. (See Ill. Rev. Stat.1987, ch. 110, par. 2—611.) On December 15, 1987, a pretrial conference was held on these pending matters. This pretrial conference was not transcribed, but, during oral argument before this court, the parties explained that the Bank made an oral section 2—615 motion to dismiss the counterclaim (see Ill. Rev. Stat. 1987, ch. 110, par. 2—615), and, specifically, John A. stated that he had made no objection to this motion then, and that he was, in fact, in favor of the entry of a final order in the matter at that time because, he said, he wanted to take the matter up in a different court, *i.e.*, the appellate court.

As a result of the pretrial conference, an order was entered which directed the distribution of the remainder of the trust in the amount of one-third to John L.'s widow, and the remaining two-thirds to the issue of John L., with John A. designated as a lawful issue; identified the beneficiaries, including John A. as a beneficiary; ordered the Bank to submit a final accounting for court approval at the conclusion of the matter of all administration expenses incurred in connection with the trust and the suit, including attorney fees and costs, and that those costs were to be paid from the trust estate prior to distribution; dismissed John A.'s counterclaim with prejudice and denied his request for an accounting based on the representations of the parties that the Bank had regularly provided accountings to the conservator of the trust during John L.'s lifetime; and provided that the order was final and appealable and disposed of all of the pending matters in the litigation.

On January 11, 1988, John A. filed a notice of appeal as to that portion of the December 15, 1987, order which granted the payment of attorney fees and dismissed his counterclaim with prejudice. John A. also appealed from the trial court's order of April 30, 1987, which transferred his third-party complaint from the chancery division to the probate division.

Three basic issues are raised on appeal: (1) whether the trial court

properly dismissed John A.'s counterclaim; (2) whether the trial court properly awarded fees and costs; and (3) whether the trial court erred when it transferred his third-party complaint to the probate division.

■ John A. first argues that the trial court improperly dismissed his counterclaim. The counterclaim essentially is based upon a claim of breach of fiduciary duty and a claim for an accounting. The oral motion to dismiss was made pursuant to section 2—615 of the Code of Civil Procedure,[2] and, thus, was premised on the argument that the counterclaim failed to state a cause of action, because either there was no such cause of action or the counterclaim was not supported by proper factual allegations. See Ill. Rev. Stat. 1987, ch. 110, par. 2—615.

■■ A cause of action for breach of fiduciary duty must set forth allegations, supported by facts, that a fiduciary relationship existed between the parties, that the trustee owed certain, specific duties to the plaintiff, that the trustee breached those duties, and that there were resulting damages. (See *McCormick v. McCormick* (1983), 118 Ill. App. 3d 455, 463, 455 N.E.2d 103, 110.) Remainder beneficiaries to a trust are "interested persons" who have an interest in maintaining the assets of the estate, and, as such, may institute actions for mismanagement of the trust or may object to a final accounting. (See *In re Estate of Provus* (1975), 30 Ill. App. 3d 378, 332 N.E.2d 759.) Therefore, on this basis, and for certain limited purposes, a trustee owes duties to the remainder beneficiaries.

■■ The right to demand an accounting is not an absolute right, but is one which may be asserted on equitable principles, and such a claim must include allegations that the circumstances make an accounting necessary and proper, that the party asked for and was denied access to the trust records, or that those records were inadequate, and that the party made a demand for an accounting and that demand was refused. (*Tankersley v. Albright* (7th Cir. 1975), 514 F.2d 956, 970-71.) There must also be allegations of wrongdoing or impropriety other than the trustee's failure to voluntarily provide an ac-

---

[2]Although oral motions are not generally favored because of the potential for uncertainty and error resulting in prejudice to the opposing party, as well as the fact that there is no written record for purposes of review, it is clear that there was no prejudice to the plaintiff here. As noted earlier, the *pro se* plaintiff, during oral argument before this court, explained that he understood that defendant had made an oral motion to dismiss the counterclaim, and that he did not object to this motion. In fact, as noted above, John A. explained that he was in favor of the court's entry of a final order in the case so that he could present his case to a different court since it appeared to him that he could get no further relief in the court below.

counting. (*Tankersley*, 514 F.2d at 970.) The mere fact that a trust was in existence for a long period of time is not a sufficient basis for a cause of action for an accounting. See *Tankersley*, 514 F.2d at 970-71 (sparse allegations based on fact that trust was in existence for 40 years are not enough).

John A. argues here that the trial court erred when it dismissed his counterclaim. He claims that as a remainder beneficiary, he has the right to demand an accounting, and that the Bank, when it denied him that right, maliciously breached its fiduciary duty to him. He also claims that the Bank's refusal to disburse funds to him until after he signed the release, and the Bank's threat of litigation when he refused to sign the release, constituted improper duress, and was a breach of fiduciary duty. He further asserts that the Bank's failure to file the instant litigation to identify the remainder beneficiaries for two years was also a breach of its fiduciary duty. John A. additionally contends that the fact that the trust was opened in 1946 with $25,000 and the fact that it is now worth only approximately $30,000 is a basis for a claim of mismanagement which entitles him to a full accounting. He also claims that the trustee's negligence in ascertaining who the remaindermen were established a breach of fiduciary duty.

Defendant argues that the trial court properly dismissed the counterclaim because there are no facts alleged to support a breach of fiduciary duty and John A.'s counterclaim does not set forth a valid basis for an accounting. The counterclaim is based on mere conclusions, the defendant asserts, and not on specific facts to sufficiently support the cause of action under Illinois law. The defendant asserts that it properly and regularly accounted, as the trial court found, to the conservator, Metzel, during John L.'s lifetime. John A.'s status as a remainder beneficiary does not, the defendant argues, automatically entitle him to an accounting.

■ Here, John A.'s allegations concerning breach of fiduciary duty and the right to an accounting are not sufficient to support a cause of action. His claim is based in large part upon the Bank's refusal to voluntarily provide an accounting, which is an insufficient basis for his claim for an accounting, and under the facts alleged, is also an insufficient basis for his claim of a breach of fiduciary duty. The only other fact alleged in support of his claim for breach of fiduciary duty and an accounting is that the Bank paid funds to Metzel and that Metzel was not legally the conservator. However, later, John A. himself relies on and, in fact, concedes that Metzel was the court-appointed conservator in other portions of his counterclaim. His claim that the Bank breached its fiduciary duty by its negligence in ascer-

taining the names of the remainder beneficiaries simply does not amount, under the allegations, to a breach of any fiduciary duty owed to a remainder beneficiary. Indeed, it seems that certain of these actions that John A. claims amounted to a breach of fiduciary duty were a result of his own demands for an accounting and his refusal to agree to the Bank's suggested distribution until he received a full accounting. There simply is not a valid basis for a breach of fiduciary duty claim stated here.

John A., furthermore, made no allegations that proper, regular accountings were not made, nor did he allege that he ever asked for and was denied access to the trustee's records, or that those records were inadequate.[3] Under the *McCormick* case, such allegations are essential. (See *McCormick*, 118 Ill. App. 3d 455, 455 N.E.2d 103.) Here, there are simply no allegations as to why an accounting is necessary, other than some vague references to some sort of collusion between the trustee and Metzel, and the suggestion that a $5,000 increase in the corpus of the trust over 34 years is unreasonably small. This simply is not enough to require a complete, independent audit of the entire history of the 34-year old trust, the remainder of which was $30,000. Moreover, although irrelevant to the motion to dismiss, the trial court noted in its order that it found that the trustee had regularly accounted to the conservator during the lifetime of the beneficiary, John L., and this finding was based upon statements made in a letter from the conservator to John A., attached as an exhibit to the counterclaim. Finally, we note that, pursuant to the court's order, a final accounting, in any event, must be submitted by the trustee and approved by the court, and John A., as a legally designated beneficiary, may properly object to that final accounting, provided he can present a valid and sufficient basis for such an objection. (See *Tankersley*, 514 F.2d at 970 n.39; *In re Estate of Provus*, 30 Ill. App. 3d 378, 332 N.E.2d 759.) Therefore, John A.'s claim for an accounting must also fail, as a matter of law.

Plaintiff next contends that the trial court erred when it awarded the Bank fees and costs to be paid out of the trust estate. In its order of December 15, 1987, the trial court awarded the Bank attorney fees and costs, in connection with the suit, to be paid out of the trust estate. The record here is somewhat unclear as to the basis for that

---

[3]Indeed, we note that even if John A. had requested a review of the records relating to the trust prior to December 15, 1987, there could have been a problem with the Bank's release of any documentation to him, because he was not legally designated as a remainder beneficiary until the court's order of December 15, 1987.

award because the Bank made a written section 2—611 motion, and the order entered by the court does not definitively state whether fees and costs were awarded pursuant to section 2—611 or under the terms of the trust agreement. See Ill. Rev. Stat. 1987, ch. 110, par. 2—611.

■ Because section 2—611 is subject to strict construction and the sanctions imposed can be quite serious, a court will generally require a separate section 2—611 hearing be held to give both sides an opportunity to present and respond to the allegations and the possible sanctions. (See generally *In re Estate of Wernick* (1989), 127 Ill. 2d 61, 535 N.E.2d 876.) There was no such hearing in the trial court below, and neither party on appeal argues that the fees awarded here were based on section 2—611. Rather, counsel for the Bank asserted on appeal that the fees award in the December 15, 1987, order was granted solely on the basis of the language of the trust agreement itself. We agree and find that the court's award of fees in the December 15 order was intended by the court to be made on the basis of the terms of the trust agreement, and also find that this conclusion is supported by the fact that there are no contrary indications in the record.

■ Additionally, John A. argues that because the Bank brought him into court, the Bank breached its fiduciary duties to him, and that, accordingly, the Bank should not have been awarded fees and costs. On the contrary, the Bank now contends, as noted, that it was properly awarded fees and costs under the terms of the trust agreement.

The trust agreement here clearly states that "[o]ut of the Income derived by the Trustee from the Trust Estate, the Trustee shall first pay all necessary costs and expenses of administering and protecting the Trust." Such an award is, therefore, proper in this situation on that basis. (See *Bartsch v. Gordon N. Plumb, Inc.* (1985), 138 Ill. App. 3d 188, 203, 485 N.E.2d 1105, 1117 (award of fees must be based upon contractual or statutory authority).) The award of fees and the amount thereof, in this type of situation, is within the discretion of the trial court, and will not be overturned absent an abuse of that discretion. (See *Northern Trust Co. v. Winona Lake School of Theology* (1978), 61 Ill. App. 3d 966, 377 N.E.2d 1182.) Although no amount was assigned for any fees here, counsel for the Bank correctly noted that any final amount submitted will be subject to court approval and, hence, will not be arbitrary or unreasonable. John A. has not, therefore, made the required showing that the trial court, in its order of December 15, 1987, abused its discretion.

■ Finally, John A. asks us to review the trial court's April 30, 1987, order which transferred his third-party complaint to probate. This is not a proper issue on appeal from the dismissal of the counterclaim, because it is based on an entirely different cause of action and these claims are still pending in the probate court below and, consequently, do not involve a final and appealable order.

Thus, for all of the reasons stated above, the court's order of December 15, 1987, is affirmed in its entirety.

Order affirmed.

EGAN, P.J., and LaPORTA, J., concur.