# In the
# United States Court of Appeals
## For the Seventh Circuit
_____

No. 03-2408

THOMAS ADAMS,

*Plaintiff-Appellant,*

v.

RICHARD CATRAMBONE and GREAT LAKES BUILDING
MATERIALS, INC.,

*Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02 C 8700—**Edward A. Bobrick**, *Magistrate Judge.*

_____

ARGUED JANUARY 7, 2004—DECIDED FEBRUARY 19, 2004

_____

Before FLAUM, *Chief Judge*, and MANION and EVANS,
*Circuit Judges.*

MANION, *Circuit Judge.* Thomas Adams appeals from
the dismissal of his claims that both Richard Catrambone
and Great Lakes Building Materials, Incorporated ("Great
Lakes") withheld his pay in violation of the Illinois Wage
Payment and Collection Act, 815 ILCS 115/1, *et seq.* ("Wage
Act"), and that Catrambone interfered with Adams's pros-
pective economic advantage and breached a fiduciary duty
to Adams. We reverse and remand for further proceedings
as to all three claims.

## I.

As this is an appeal from a dismissal under Federal Rule of Civil Procedure 12(b)(6), we assume the truth of the allegations in the complaint. In doing so, we in no way vouch for the truth of the allegations, in particular the serious charges that Catrambone engaged in corruption by siphoning off corporate assets. At the time of Great Lakes's formation in July 2001,[1] Adams and Catrambone intended that Adams would become a 50% shareholder in the company. On October 1, 2001, Adams paid $50,000 for his stock interest in Great Lakes and became a full-time employee of the company, working primarily as a salesman. At some point (the exact date is unclear from the complaint), Adams actually became a 50% owner and vice president of the company. Adams did substantial work in 2001 and 2002 for Great Lakes. Most of that work took place in Illinois, although Adams is a resident of Michigan. Great Lakes and Catrambone, however, paid Adams for only three weeks of his work. In addition to not paying Adams, in September 2002 Catrambone terminated Adams's employment just before he was about to expose Catrambone's corruption, including the diversion of Great Lakes's money into the accounts of Catrambone's other businesses. Over Adams's protest, Catrambone then returned the $50,000 that Adams had paid for his stock.

---

[1] Although Adams does not specifically set it out in the complaint, Catrambone states in his brief that he was the sole incorporator, officer, and shareholder when the corporation was first set up. The primary questions raised by the complaint are whether, at some point, Adams and Catrambone "were to be equal shareholders in Great Lakes," and that Adams paid "50,000 dollars for the stock interest in Great Lakes."

Adams filed suit in the district court, invoking diversity jurisdiction. First, Adams alleged that both defendants violated the Wage Act by failing to pay him for the services he rendered to the company. Second, Adams alleged that Catrambone interfered with his prospective economic advantage. Third, Adams alleged that Catrambone breached his fiduciary duty to Adams. Adams also seeks other forms of relief—an accounting, back wages, and reimbursement of business expenses—that he styles as "counts," but that are really just remedies to which he might be entitled if he were to prevail on his substantive claims.[2] Adams maintains that, all told, he is entitled to more than $75,000 in monetary relief, that he is a citizen of Michigan, and that Catrambone and Great Lakes are citizens of Illinois. Diversity jurisdiction thus exists on the face of the complaint. 28 U.S.C. § 1332 (2000).[3]

---

[2] An accounting is a form of equitable relief incidental to a substantive claim. *See 2416 Corp. v. First Nat'l Bank of Chicago*, 415 N.E.2d 420, 426 (Ill. App. Ct. 1980). Back wages and reimbursement of business expenses are forms of relief to which Adams might be entitled were he to prevail on his claim under the Wage Act. *See* 820 ILCS 115/2.

[3] In the original complaint, Adams properly pleaded the Illinois citizenship of Great Lakes Building Materials, Inc., asserting that both its state of incorporation and principal place of business were in Illinois. As to the two individual parties, however, the complaint merely alleged that Adams was a "resident" of Michigan and that Catrambone was a "resident" of Illinois. "When the parties allege residence but not citizenship, the [district] court must dismiss the suit." *Guaranty Nat. Title Co. v. J.E.G. Associates*, 101 F.3d 57, 59 (7th Cir. 1996). On appeal, we ordered Adams to amend his complaint in this court, pursuant to 28 U.S.C. § 1653, by alleging the citizenship, not residence, of the

(continued...)

The district court, with a magistrate judge presiding by consent of the parties, dismissed the Wage Act claim on the ground that only Illinois residents are employees within the Act's protection. It dismissed Adams's claim for interference with prospective economic advantage on the ground that Adams had not pleaded that Catrambone acted toward a third party. Finally, the district court dismissed Adams's claim for breach of fiduciary duty on the ground that Adams failed to plead the existence of a fiduciary relationship. Adams appeals from the dismissal of each claim.

## II.

We review de novo the district court's grant of a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6). *International Mktg., Ltd. v. Archer-Daniels-Midland Co.*, 192 F.3d 724, 729 (7th Cir. 1999). Dismissal is proper "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

The district court dismissed Adams's claim under the Wage Act solely because it concluded that nonresidents of Illinois are not employees within the ambit of the statute, regardless of whether they work in Illinois. Determining whether the Wage Act applies to employees who work, but do not reside, in Illinois is a matter of interpreting state law, and the Supreme Court of Illinois has not ad-

---

(...continued)
individual parties. *See Quinn v. McGraw-Hill Cos.,* 168 F.3d 331, 334 n.1 (7th Cir. 1999). Adams did so, the defendants do not challenge the existence of diversity jurisdiction, and we now are satisfied that the parties actually are diverse.

dressed this issue. We therefore determine the question as we predict the Supreme Court of Illinois would if it were deciding the case. *Mutual Serv. Cas. Ins. v. Elizabeth State Bank*, 265 F.3d 601, 612 (7th Cir. 2001). The decisions of the Illinois Appellate Court are persuasive authority. *AAR Aircraft & Engine Group, Inc. v. Edwards*, 272 F.3d 468, 470 (7th Cir. 2001). Although those decisions do not bind us, we shall follow them unless we have a "compelling reason" to believe that they have stated the law incorrectly. *Id.*

The Wage Act "applies to all employers and employees in [Illinois]." 820 ILCS 115/1 (West 1999 & Supp. 2003). Relying entirely on *Glass v. Kemper Corp.*, 133 F.3d 999, 1000 (7th Cir. 1998), the district court held that nonresidents of Illinois are not "employees in [Illinois]," regardless of whether they work in the state, and that Adams therefore failed to state a claim. We interpret *Glass* differently, and we anticipate that the Supreme Court of Illinois would hold that the Wage Act protects nonresidents of Illinois who perform work in that state for an in-state employer. According to the Illinois Supreme Court, "[t]he primary rule of statutory construction is to ascertain and give effect to the intent of the legislature." *People v. Donoho*, 788 N.E.2d 707, 715 (Ill. 2003). The best evidence of that intent is the language of the statute. *Id.* When possible, the Supreme Court of Illinois will "interpret the statute according to the plain and ordinary meaning of the language." *Id.* It will also consider the law's purpose. *Id.* If the statute is "subject to two or more reasonable interpretations," the Illinois Supreme Court will resort to interpretive aids. *Id.*

As stated previously, the Wage Act "applies to all employers and employees in [Illinois]." 820 ILCS 115/1. Adams alleges that he worked in Illinois for Great Lakes, which would seem to place him within the class of workers to whom the Wage Act applies. The Wage Act's definition

of "employee" gives further illumination: "[a]s used in this Act, the term 'employee' shall include any individual permitted to work by an employer in an occupation." 820 ILCS 115/2. But the statute also carves out an exclusion[4] from this definition. It states that the term "employee"

> shall not include any individual:
>
> (1) who has been and will continue to be free from control and direction over the performance of his work, both under his contract of service with his employer and in fact;
>
> *and*
>
> (2) who performs work which is either outside the usual course of business or is performed outside all of the places of business of the employer unless the employer is in the business of contracting with third parties for the placement of employees; *and*
>
> (3) who is in an independently established trade, occupation, profession or business.

*Id.* (emphasis on the conjunctives added). Considering 820 ILCS 115/1 and 115/2 together, it becomes apparent that whether someone is an employee within the ambit of the Wage Act hinges on (1) whether he was an "individual permitted to work by an employer in an occupation" in Illinois, and (2) whether he is excepted under the three-pronged test for exclusion listed in 820 ILCS 115/2(1)-(3).

---

[4] This exclusion is designed to distinguish between protected employees and independent contractors, who are not protected. *Cf. Carpetland v. Illinois Dept. of Emp. Sec.,* 776 N.E.2d 166, 169 (Ill. 2002) (construing a similarly worded exclusion in 820 ILCS 405/212).

With regard to prong one, the defendants rely on *Khan v. Van Remmen, Inc.*, 756 N.E.2d 902, 913 (Ill. App. Ct. 2001), for the proposition that the Wage Act applies only to residents of Illinois. But *Khan* resolved a different question: whether a resident of Illinois "can state a cause of action against an out-of-state employer under the Wage Act." *Id. Khan* did not address the converse question we face here: whether a nonresident employee who worked in Illinois could maintain a claim under the Wage Act against an in-state employer. Nothing in *Khan* suggests that the Wage Act can never apply to a nonresident of Illinois, and so that decision does not lead us to believe that the Illinois Supreme Court would reach that conclusion either.

The defendants nevertheless point out, correctly, that both the court below and the district court in *PRM Realty Group v. Wood*, No. 02 C 3396, 2002 WL 1792063, at *1 (N.D. Ill. Aug. 5, 2002), have interpreted *Glass* to indicate that the Wage Act applies only to Illinois residents. But, in relevant part, that is not what *Glass* says:

> The dismissal of the statutory claim was clearly correct. The act "applies to all employers and employees in this State." 820 ILCS 115/1. The plaintiff is not, and at no time relevant to this suit was he, a resident of Illinois. *Nor did he perform any work in Illinois*; all the work that he did for the defendants was done in Spain. Although the employer defendants have their principal places of business in Illinois, and are therefore "employers . . . in this State," we do not think the statute has an extra-territorial reach. Its evident purpose is to protect employees in Illinois from being stiffed by their employers; to this end it imposes heavy sanctions on employers who fail to pay wages that have accrued. 820 ILCS 115/14.

*Glass*, 133 F.3d at 1000 (emphasis added). In our view, *Glass* implies that the Wage Act protects an employee who performs work in Illinois for an Illinois employer, even if he resides in another state. That is why the court in *Glass* found it necessary to point out, when it explained why dismissal of Glass's Wage Act claim was appropriate, that Glass had not "perform[ed] any work in Illinois." Logically, if the employee performs his work in Illinois, he is an employee in Illinois. Thus, to whatever extent the Supreme Court of Illinois might find *Glass* persuasive, it would be more likely to hold that the Wage Act applies to a nonresident, such as Adams, who performs his work within Illinois for an in-state employer.

After considering the authorities discussed above, we hold what *Glass* implied and what the language of the statute makes plain: nonresidents of Illinois who work in that state for an in-state employer may qualify as employees within the protection of the Wage Act. This interpretation of the statute promotes the Wage Act's purpose: "to protect employees *in Illinois* from being stiffed by their employers." *Id.* (emphasis in original). The Wage Act's applicability to nonresidents who perform their work in Illinois for an in-state employer is sufficiently clear to preclude any need to resort to additional interpretive aids.

The defendants argue in the alternative that, even if the Wage Act were to apply to nonresidents, dismissal would still be appropriate because Adams comes under the exclusion in 820 ILCS 115/2, making him a non-employee. Nothing in the complaint could be construed to suggest that he fits within the provisions of 820 ILCS 115/2(2) or (3), and the defendants do not argue as much. That observation would seem dispositive, because the three-pronged exclusion is, as we emphasized, drafted in the conjunctive; meeting just one of the three prongs will not suffice. None-

theless, relying on *Doherty v. Kahn*, 682 N.E.2d 163 (Ill. App. Ct. 1997), the defendants argue that we should read the exclusion in the disjunctive and affirm dismissal of Adams's Wage Act claim simply because Adams meets the first prong of the exclusion, 820 ILCS 115/2(1). The defendants maintain that Adams, by alleging that he was a 50% shareholder and vice-president of Great Lakes, has established that he was "free from control and direction over the performance of his work, both under his contract of service with his employer and in fact" and that 820 ILCS 115/2(1) thus establishes that he was not an employee under the Wage Act.

*Doherty* supports the defendants' position. The *Doherty* court held that, because the plaintiff "was an employee who also had *some control* over the business and direction over the performance of his work," he fit within the exclusion of 820 ILCS 115/2(1) and, for that reason alone, did "not fall into the class of employees the Wage Act seeks to protect." *Id.* at 173 (emphasis added). In reaching that conclusion, the *Doherty* court did not find it necessary to address the second or third prongs of the exclusion, 820 ILCS 115/2(2) and (3). Were we to find *Doherty* persuasive, and confine our analysis to the first prong, we would affirm dismissal of Adams's claim under the Wage Act, at least insofar as Adams sought to recover wages earned after, as he claims, he became a 50% shareholder and officer of Great Lakes. In paragraph seven of the complaint, Adams alleges that in his capacity "as a shareholder and officer of Great Lakes," he secured a $250,000 line of credit for the company in February 2002. Only a person with at least some control over the business and direction over the performance of his work could accomplish such a task, and so Adams has alleged himself to be in a position analogous to the one occupied by the unsuccessful plaintiff in *Doherty*.

But *Doherty* is unpersuasive because, as we emphasized above, 820 ILCS 115/2 is drafted in the conjunctive: the word "and" joins 820 ILCS/2(1), (2), and (3), which means that only a plaintiff who meets all three prongs of 820 ILCS 115/2 falls within the statutory exclusion to the Wage Act's definition of "employee." *Cf. City of Carbondale v. Brewer*, 773 N.E.2d 182, 186 (Ill. App. Ct. 2002) (interpreting "and" as conjunctive). In its short analysis of 820 ILCS 115/2, *Doherty* did not address the second or third prongs of the exclusion. Instead, it upheld the dismissal of Doherty's claim under the Wage Act because he satisfied just the first prong of the exclusion. As noted above, the conjunctive language in the statute requires that all three prongs be met.

This conclusion is strongly supported by *AFM Messenger Serv., Inc. v. Department of Emp. Sec.*, 763 N.E.2d 272 (Ill. 2001), where the Illinois Supreme Court applied a similarly worded exclusion to the Illinois Unemployment Insurance Act and reasoned that "because the three conditions . . . are phrased in the conjunctive, all three conditions must be satisfied for the independent contractor exemption to apply." *Id.* at 283; *see Amoroso v. Crescent Private Capital, L.P.*, No. 02 C 1453, 2003 WL 22344098, at *3 (N.D. Ill. Oct. 14, 2003). Based on the holding in *AFM*, were this question before the Supreme Court of Illinois, it would hold that all three conditions of 820 ILCS 115/2 must likewise be satisfied before the exclusion could apply. As nothing in the complaint shows that Adams meets all three prongs of the exclusion delineated in 820 ILCS 115/2, we conclude that the exclusion does not apply to him.

Thus we conclude that nonresidents who work in Illinois for an in-state employer may state a claim under the Wage Act and that the exclusion to the Wage Act's definition of "employee" does not apply to Adams. We reverse the district court's dismissal of Adams's claim under the Wage Act.

We next consider the dismissal of Adams's claim against Catrambone for interference with prospective economic advantage. The district court dismissed this claim for one reason: Adams had not pleaded that Catrambone acted toward a third party. "[T]he tort of interference with prospective advantage requires a showing of action by the defendant toward a third party." *Vickers v. Abbott Labs.*, 719 N.E.2d 1101, 1116 (Ill. App. Ct. 1999). The district court reasoned thus: "Plaintiff's complaint does not mention any third party. All plaintiff alleges is, essentially, that Catrambone was supposed to make him a shareholder but did not."

Although not particularly well drafted, Adams's complaint sets forth that Catrambone interfered with his prospective employment with Great Lakes (the third party), and the future economic advantages it entailed, for an illegitimate purpose: to thwart Adams's incipient exposure of Catrambone's fraud against the corporation.[5] The district court should not have dismissed this claim on the ground

---

[5] The assertion that Catrambone siphoned money from the corporation is in paragraph fifteen of the complaint, where Adams alleges that "in the course of conducting business, the Plaintiff ascertained and determined that the Defendant, Richard Catrambone, failed to disclose and clandestinely hid from Plaintiff, certain profits and avails that were diverted from Great Lakes and Plaintiff to the benefit of Defendant, Richard Catrambone." The allegation that Catrambone fired Adams as part of a cover-up is in paragraph sixteen, where Adams pleads that after he confronted Catrambone, he "was effectively terminated from all information, operation and access" at Great Lakes. Although these allegations come under the heading of count I, "Accounting and Other Relief," they nonetheless notify the defendants of the basis of Adams's claim. Under Federal Rule of Civil Procedure 8, that suffices. *See Bartholet v. Resihauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992).

that Adams failed to plead the element of action by Catrambone toward a third party.

Catrambone argues in the alternative that dismissal of this claim was appropriate because, as a corporate officer, he enjoyed a qualified privilege to interfere with Adams's prospective economic advantage with the corporation. Such a privilege exists, but it is inapplicable where, as Adams alleges, the defendant's action is without justification (e.g., when the interference was designed to cover up the defendant's theft of corporate assets). *Mittelman v. Witous,* 552 N.E.2d 973, 987 (Ill. 1989), *abrogated on other grounds by Kuwik v. Starmark Star Marketing & Admin., Inc.,* 619 N.E.2d 129 (Ill. 1993); *Schuler v. Abbott Labs.,* 639 N.E.2d 144, 148 (Ill. App. Ct. 1993) (stating that the privilege is inapplicable where the defendant's "actions were unrelated to or antagonistic to the interest that gave rise to the privilege"). We therefore reverse dismissal of Adams's claim for interference with prospective economic advantage.

Adams's final claim is for breach of fiduciary duty. A claim "for breach of fiduciary duty must set forth . . . that a fiduciary relationship existed between the parties, that the trustee owed certain, specific duties to the plaintiff, that the trustee breached those duties, and that there were resulting damages." *Chicago City Bank & Trust Co. v. Lesman,* 542 N.E.2d 824, 826 (Ill. App. Ct. 1989). The district court dismissed this claim on the ground that Adams did not allege the existence of a fiduciary relationship. It reached this conclusion because, in its view, the complaint alleged no more than a failed business deal, and the parties to a business deal do not owe one another a fiduciary duty.

We disagree with the district court's characterization of the complaint. Although not a model of clarity, the complaint does allege that Catrambone, who was a 50% shareholder in Great Lakes, "owed a fiduciary duty to Plaintiff as

a 50% shareholder and co-venturer in the entity and business to act in an honest forthright manner and deal fairly and honestly with the Plaintiff." These allegations, if true, would establish the existence of a fiduciary duty: "[s]hareholders in a close corporation owe to each other fiduciary duties similar to those of partners in a partnership." *Anest v. Audino*, 773 N.E.2d 202, 209 (Ill. App. Ct. 2002). It is true that some aspects of the complaint, taken in isolation, could be read to suggest that Adams was never a 50% shareholder, that he was only supposed to become one. The complaint suffices, however, to place Catrambone on notice that he is alleged to have violated a fiduciary duty to Adams, the only other shareholder in the corporation, by siphoning off corporate assets. The complaint is therefore good enough for Adams's claim to survive a motion to dismiss. *See Ross Bros. Const. Co. v. International Steel Servs.*, 283 F.3d 867, 873 (7th Cir. 2002).

### III.

The Wage Act applies to nonresidents who work in Illinois for an Illinois employer, and not all three criteria of the exclusion in 820 ILCS 115/2 apply to Adams. We therefore reverse dismissal of his claim under the Wage Act. Adams alleged that Catrambone interfered with his prospective economic relations with a third party, Great Lakes, and that Catrambone did so in order to cover up his diversion of corporate assets. We therefore REVERSE dismissal of Adams's claim for interference with prospective economic advantage. Adams alleged that he and Catrambone were shareholders in a close corporation, and that Catrambone thus had a fiduciary duty to Adams. Accordingly, we REVERSE dismissal of Adams's claim for breach of fiduciary duty. We REMAND for further proceedings.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*