**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 220483-U

Order filed October 24, 2023

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| BRANDON BOSCH, not Individually, but as Successor Trustee of the KAREN A. KIRKBY TRUST DATED SEPTEMBER 11, 2003, and Restated on FEBRUARY 10, 2013, | ) ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois. |
| Plaintiff-Appellant, | ) ) ) | |
| v. | ) ) | Appeal No. 3-22-0483 Circuit No. 19-CH-1180 |
| DAVID KIRKBY, Individually and as Trustee of the STEPHEN D. KIRKBY TRUST AGREEMENT DATED NOVEMBER 1, 2001 and Restated on SEPTEMBER 3, 2003, | ) ) ) ) | |
| Defendant-Appellee. | ) ) ) | The Honorable Anne Therieau Hayes, Judge, Presiding. |

JUSTICE HETTEL delivered the judgment of the court.
Justices Brennan and Peterson concurred in the judgment.

**ORDER**

¶ 1     *Held*:   Trial court properly granted summary judgment to trustee of father's trust on claims of breach of fiduciary duty, unjust enrichment, accounting and trust construction filed by representative of father's wife's estate and trustee of her trust where father's trust required trustee to pay his wife's expenses only if necessary after considering wife's resources and wife had more than enough assets to pay her expenses.

¶ 2    Stephen Kirkby and Karen Kirkby were a married couple who had separate assets in separate trusts. Stephen died in 2010, and his son, defendant David Kirkby became the trustee of his trust. In 2017, Karen suffered a stroke and required care in a nursing home for several months before she died in 2018. After Karen's death, her son, plaintiff Brandon Bosch, as trustee of her trust and representative of her estate, filed a complaint against David for breach of fiduciary duty, unjust enrichment, trust construction, and accounting. Thereafter, Brandon filed a motion for partial summary judgment, and David filed a motion for summary judgment on all counts. The trial court denied Brandon's motion and granted David's motion. Brandon appeals, arguing that the trial court erred in granting summary judgment to David. We affirm.

¶ 3    I. BACKGROUND

¶ 4    Stephen Kirkby and Karen Kirkby were husband and wife. They both had children from prior marriages. During their marriage, Stephen and Karen created separate trusts. Stephen's original revocable living trust was created on November 1, 2001, and restated on September 3, 2003, and June 22, 2006. Stephen was the initial trustee of his trust. His son, David Kirkby, was his successor trustee. Karen's original trust was created on September 11, 2003, and restated on February 19, 2013. Karen also drafted a will in 2013 that left her estate to her trust. Karen was the trustee of her trust. Her son, Brandon Bosch, was the successor trustee. Stephen and Karen funded their trusts with separate personal assets.

¶ 5    Stephen's trust contained the following plan of distribution upon his death:

"Upon my death, my successor trustee(s) shall take charge of the assets then remaining in this trust and make distribution thereof according to the following plan of distribution:

1. Pay all of my legally enforceable debts ***.

2

2. My spouse is *KAREN A. KIRKBY* and my children are *DAVID E. KIRKBY, MARY BETH MORAN, JENNIFER L. KIRKBY* and *CAROLYN L. BERG*.

3. I may from time to time indicate my desire that specific gifts be made from this living trust upon my death. If I make known my desire in writing referring to or attached to this trust agreement, upon my death, the trustee(s) shall distribute the specific gifts as if the specific gifts had been made in this trust agreement itself. \*\*\*

4. If my spouse, *KAREN A. KIRKBY*, survives me, my personal effects \*\*\* shall be distributed to my surviving spouse. \*\*\*

5. If my spouse, *KAREN A. KIRKBY*, survives me, the net proceeds of this trust remaining after compliance with the previous provisions shall be distributed to and administered pursuant to the provisions for the Marital Deduction Share and the Non-Marital Share as described hereunder."

¶ 6 On November 8, 2010, Stephen completed a form attached to his trust, which stated in pertinent part: "Immediately upon my death, I desire cash gifts be made to my children David Kirkby, Mary Beth Moran and Jennifer Kirkby equivalent to a maximum of the outstanding loan balance made to Carolyn Kirkby, less any existing loans outstanding to David, Mary Beth or Jennifer.

¶ 7 Stephen died on December 30, 2010. At that time, Stephen's trust had insufficient assets to fund the marital deduction share of the trust. Stephen's trust provided, in pertinent part, as follows with respect to non-marital portion of the trust:

"5. The Non-Marital Share shall be distributed to a Credit Shelter Trust, to be administered pursuant to the following terms and conditions.

3

a. *DAVID E. KIRKBY* shall be the trustee of the Credit Shelter Trust and, during my spouse's lifetime, this trust shall be administered for the benefit of my spouse as hereinafter provided. *** The trustee shall pay to or use for the benefit of my spouse so much of the net income and principal of the Credit Shelter Trust as the trustee shall deem necessary for the health, education, maintenance, or support of my spouse, taking into consideration all other means available to my spouse for such purposes from all sources known to my trustee."

The trust provided that upon Karen's death, the assets remaining in the Credit Shelter Trust would be divided among Stephen's children.

¶ 8        At the time of Stephen's death, the outstanding balance on the loan Stephen made to Carolyn was $315,338.43. Because providing cash gifts equivalent to that amount to David, Mary Beth and Jennifer would have almost entirely depleted Stephen's trust, David, as trustee of Stephen's trust, distributed half of that amount ($157,851.42) to himself, Mary Beth and Jennifer in 2011. David considered the remaining half of the gifts owed to himself, Mary Beth and Jennifer, totaling $473,008, as a liability of the trust.

¶ 9        After Stephen's death, Karen continued to reside in the condominium she had lived in with Stephen, which was owned by Stephen's trust. David, as trustee of Stephen's trust, continued to pay the mortgage, homeowner's association fees, taxes and insurance on the condominium after Stephen's death.

¶ 10       Karen had a stroke on December 4, 2017. On February 22, 2018, Brandon became the successor trustee of Karen's trust. Karen entered a nursing home on March 28, 2018, and died on August 24, 2018. Brandon paid for Karen's nursing home expenses of $57,000 out of assets in Karen's trust.

4

¶ 11        On December 16, 2019, David provided Brandon with an accounting of Stephen's trust for the years 2013 to 2018. The accounting lists a liability each year of $473,008 for the amounts still owed to David, Mary Beth and Jennifer under the terms of Stephen's trust. As a result, the trust had a negative value each year from 2013 to 2018.

¶ 12        On May 22, 2020, Brandon was appointed special representative of Karen's estate. On July 7, 2020, Brandon, as successor trustee of Karen's trust and special representative of Karen's estate, filed a four-count amended complaint against David individually and as trustee of Stephen's trust. Count I alleged breach of fiduciary duty, stating, in part, that David "failed and refused to carry out his duties as trustee to Karen Kirkby by failing to disburse any funds to her for her health, maintenance, and welfare when Karen Kirkby required assisted care in a nursing home after her stroke." Count II sought an "accurate" accounting of Stephen's trust, alleging that the accounting he received on December 16, 2019, was inaccurate because it showed a liability of $473,008 each year. Count III sought construction of Stephen's trust and sought "a declaration from the Court that David Kirkby in his official capacity as trustee of the Stephen Kirkby Trust was required to pay costs associated with health, comfort, and maintenance of Karen Kirkby after she required nursing home care beginning on March 28, 2018." Count IV alleged unjust enrichment, alleging that Stephen's trust, rather than Karen's trust, should have paid Karen's nursing home expenses of $57,000.

¶ 13        David filed a motion to dismiss, which the trial court denied. Thereafter, Brandon filed a motion for summary judgment on counts I and IV of his amended complaint, and David filed a motion for summary judgment on all counts of the complaint. Attached to David's motion was an affidavit from him, in which he stated that he knew Karen: (1) sold property in Arizona for $405,000 in 2011, (2) received Stephen's IRA account valued at $69,000 in 2010, and (3) received

5

monthly social security income of $2,051 after Stephen's death. David also stated that he received a trust inventory from Brandon, dated June 28, 2018, showing that Karen's trust had $665,995.49 in assets as of that date.

¶ 14    On October 20, 2022, the circuit court held a hearing on the parties' motions for summary judgment. On October 31, 2022, the court orally denied Brandon's motion and granted David's motion. With respect to count I, the court stated: "The Court finds that David Kirkby properly exercised his discretion and his actions were done within the bounds of reasonable judgment." On count II, the court found that David provided an accurate accounting because the unpaid gifts to Stephen's children were liabilities. Regarding count III, the court stated: "The Court finds the language of the Trust is unambiguous. It clearly required the trustee to consider other means Karen had available from all sources before distributing funds for the health, education, maintenance or support of Karen." Finally, with respect to count IV, the court stated: "David followed and exercised reasonable discretion following the language of the trust."

¶ 15    On November 4, 2022, the circuit court entered a written order denying Brandon's motion for partial summary judgment and granting David's motion for summary judgment.

¶ 16                                    II. ANALYSIS

¶ 17    Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). A disposition based upon summary judgment is reviewed *de novo*. *Id*. "Summary judgment is appropriate in a case involving the construction of a trust, because the ascertainment of the trust's meaning or intent is strictly a matter of law." *Gearhart v. Gearhart*, 2020 IL App (1st) 190042, ¶ 121.

¶ 18                              A. Trust Construction

¶ 19	We first address Brandon's claim of trust construction because construction of Stephen's trust resolves Brandon's remaining claims against David. Brandon argues that Stephen's trust required David, as trustee of Stephen's trust, to pay for Karen's nursing home expenses.

¶ 20	The central purpose of trust construction is to ascertain the settlor's intent from the trust as a whole and to effectuate that intent as long as it is not contrary to public policy. *Harris Trust and Savings Bank v. Donovan*, 145 Ill. 2d 166, 172 (1991). In construing trusts, courts must apply the same rules of construction as apply to wills and other contracts. *Id*.; *Northern Trust Co. v. Tarre*, 86 Ill. 2d 441, 450 (1981). The objection of judicial construction is to determine the intent of the parties and carry it out. *Id*.

¶ 21	"The settlor's intent is to be determined solely by reference to the plain language of the trust itself." *Stein v. Scott*, 252 Ill. App. 3d 611, 615 (1993). Whether a document is ambiguous is a question of law to be determined by the court, and ambiguity can be found only if the language is reasonably or fairly susceptible to more than one interpretation. *Id*. A trust is not ambiguous merely because the parties disagree about its meaning. *Id*.

¶ 22	"In construing trusts, courts should give effect to each word and phrase and should decline to adopt a construction which would render any portion of the language meaningless or nonsensical." *Id*. at 615-16. Courts should construe trusts so that no language "is treated as surplusage or rendered void or insignificant." *Harris Trust*, 145 Ill. 2d at 172. "When the language of a trust is clear, the court should not modify the document or create new terms." *Gearhart*, 2020 IL App (1st) 190042, ¶ 135.

¶ 23	Trust language stating that "the trustee may in the trustee's discretion pay to, or use for the benefit of [a beneficiary] so much or all of the income and principal *** as the trustee from time to time deems necessary and advisable" "confers upon the trustees unfettered discretion to

7

determine if and when [the beneficiary] should receive trust funds, and in what amount." *Stein*, 252 Ill. App. 3d at 615. Such language reflects the settlor's intent that the determination of what is necessary and advisable for the beneficiary's support "be left solely to [the trustee's] judgment; and this broad grant of responsibility necessarily includes the prerogative to consider all financial resources at [the beneficiary's] disposal." *Id*. Even if a trust contains no express direction that the trustee consider the beneficiary's income or assets, the trustee may take those into account when determining whether to make payments to the beneficiary and may require exhaustion of the beneficiary's income or assets before distributing trust assets to the beneficiary. See *id*. at 615-16.

¶ 24         Trust language that directs the trustees to "pay *** so much of the net income as the trustees shall deem advisable for the proper care, support, maintenance or education" of a beneficiary "confers a great deal of discretion to the trustees." *Laubner v. JP Morgan Chase Bank, N.A.*, 386 Ill. App. 3d 457, 464 (2008). When a trust confers discretion upon a trustee, its exercise is not subject to control by courts, except to prevent an abuse of the trustee's discretion. *Id*. (citing Restatement (Second) of Trusts § 187, at 402 (1959)). While a trustee must be mindful of the beneficiaries' interests and cannot act inconsistently with those interests, "a court will not interfere with a trustee's exercise of discretion given to him by the trust instrument so long as the trustee does not act in a wholly unreasonable and arbitrary manner." *Faville v. Burns*, 2011 IL App (1st) 110335, ¶ 35 (citing *Laubner*, 386 Ill. App. 3d at 464).

¶ 25         Here, the language of Stephen's trust is clear and ambiguous. It granted David, as trustee, considerable discretion by allowing him to determine if and when trust assets were "necessary for the health, education, maintenance, or support" of Karen. See *Stein*, 252 Ill. App. 3d at 615; *Laubner*, 386 Ill. App. 3d at 464. Additionally, the trust language not only allowed, but required,

8

David, in exercising his discretion, to "tak[e] into consideration all other means available to" Karen before utilizing Stephen's trust assets for Karen's benefit.

¶ 26    The record shows that David knew Karen had considerable funds in her trust because: (1) Karen earned $405,000 from her sale of property in 2010, (2) Karen was awarded Stephen's IRA account with a balance of $69,000 upon Stephen's death, (3) Karen received monthly social security income of more than $2,000 after Stephen died, (4) Karen paid no mortgage, fees or expenses for the condominium where she lived, and (5) David received an accounting from Brandon in June 2018, showing Karen had more than $600,000 in her trust. Thus, David's decision not to use funds from Stephen's trust to pay Karen's $57,000 in nursing home expenses was not arbitrary or unreasonable. Karen had more than sufficient assets available to pay her expenses, so it was not "necessary" for David to expend funds from Stephen's trust. The trial court properly granted summary judgment to David on this count of Brandon's complaint.

¶ 27                    B. Breach of Fiduciary Duty and Unjust Enrichment

¶ 28    The trial court also properly granted summary judgment to David on Brandon's claims of breach of fiduciary duty and unjust enrichment.

¶ 29    "A trustee owes a fiduciary duty to a trust's beneficiaries and is obligated to carry out the trust according to its terms and to act with the highest degrees of fidelity and utmost good faith." *Fuller Family Holdings, LLC v. Northern Trust Co.*, 371 Ill. App. 3d 605, 615 (2007). To state a cause of action for breach of fiduciary duty, a plaintiff must allege and prove: (1) a fiduciary duty on the part of the defendant, (2) a breach of that duty, (3) damages, and (4) a proximate cause between the breach and the damages. *Gearhart*, 2020 IL App (1st) 190042, ¶ 144. "The presence of good faith and common prudence necessarily dictates the absence of a breach of fiduciary duty." *NC Illinois Trust Co. v. First Illini Bancorp, Inc.*, 323 Ill. App. 3d 254, 263 (2001).

9

¶ 30    To state a cause of action for unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment and that defendant's retention of the benefit violates fundamental principles of justice, equity, and good conscience. *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill. 2d 145, 160 (1989). A plaintiff alleging an unjust enrichment claim is seeking to recover a benefit from the defendant because one of the following situations exists: (1) the benefit should have been given to the plaintiff but was given to the defendant instead, (2) the defendant procured the benefit through some type of wrongful conduct, or (3) the plaintiff for some other reason had a better claim to the benefit than the defendant. See *id.* at 161-62.

¶ 31    A circuit court may properly grant summary judgment to a trustee against claims of breach of fiduciary duty and unjust enrichment where the trustee exercises his discretion in a manner that is not "wholly unreasonable or arbitrary." See *Carter v. Carter*, 2012 IL App (1st) 110855, ¶¶ 37-41; see also *Rubinson v. Rubinson*, 250 Ill. App. 3d 206, 214-15 (1993) (reversing summary judgment against trustees on claim of breach of fiduciary duty where trustees had sole discretion to determine when and how much to pay beneficiary). When trust language provides a trustee with discretion in determining whether and when to distribute funds to beneficiaries, a beneficiary has no valid claim of unjust enrichment against the trustee based on his exercise of that discretion. See *Hatcher v. Hatcher*, 2020 IL App (3d) 180096, ¶¶ 16-20.

¶ 32    Here, as explained above, Stephen's trust gave David considerable discretion in determining when trust assets were "necessary for the health, education, maintenance, or support of [Karen] after taking into consideration all other means available to" her. It is undisputed that Karen had more than sufficient assets to pay for her nursing home care. Thus, David did not act unreasonably in refusing to provide funds to Karen for her nursing home expenses, and the circuit

10

court properly granted summary judgment to David on these counts of Brandon's complaint. See *Hatcher*, 2020 IL App (3d) 180096, ¶¶ 16-20; *Carter*, 2012 IL App (1st) 110855, ¶¶ 37-41; *Rubinson*, 250 Ill. App. 3d at 214-15.

¶ 33                                    C. Accounting

¶ 34     Finally, the trial court properly granted summary judgment to David with respect to Brandon's accounting claim.

¶ 35     To state a claim for accounting against a trustee, a beneficiary must allege that an accounting was demanded but not provided, that the beneficiary asked for and was denied access to the trustee's records, or that the trustee's records were inadequate. See *Chicago City Bank and Trust Co. v. Lesman*, 186 Ill. App. 3d 697, 701 (1989). A beneficiary may object to a trustee's accounting only if he can present a valid and sufficient basis for the objection. See *id.* at 703.

¶ 36     Here, Brandon does not allege that David did not provide him with an accounting of Stephen's trust nor does he allege that David denied him access to trust records or that trust records were inadequate. Rather, Brandon alleges that the accounting David provided him in 2019 for the years of 2013 to 2018 was "inaccurate" because it lists $473,008, the amount Stephen's trust still owed David, Mary Beth and Jennifer, as a liability each year. Brandon's objection is not well founded.

¶ 37     Pursuant to Stephen's trust, "[i]mmediately upon [his] death", cash gifts were to be distributed to David, Mary Beth and Jennifer in an amount equal to the loan he provided to Carolyn, which was $315,338.43. In 2011, David distributed cash gifts of half of that amount to himself, Mary Beth and Jennifer and listed the remaining amount owed to himself, Mary Beth and Jennifer as a liability of the trust. As the circuit court found, David's accounting was accurate because the liability he listed was still owed under the language of Stephen's trust. Therefore,

11

Brandon has no valid basis to object to David's accounting, and the trial court properly granted summary judgment to David on this claim.

¶ 38                                    IV. CONCLUSION

¶ 39        The judgment of the circuit court of Du Page County is affirmed.

¶ 40        Affirmed.